N

DEPARTMENT OF THE NAVY
NAVAL AIR SYSTEMS COMMAND
RADM WILLIAM A. MOFFETT BUILDING
47123 BUSE ROAD, BLDG 2272, STE 353
PATUXENT RIVER MD 20670-1547

IN REPLY REFER TO

4200
Ser 2.4.3.3./04-135
30 July 2004

Armour of America
Attn: Mr. John Nehmans/Mr. Matt Williams
1814 West 135th Street
Gardena, CA 90249-2584

Subj: Cure Notice In Accordance With Federal Acquisition Regulation Part 49.607

Gentlemen:

You are hereby notified that the Government considers your failure to successfully demonstrate that your Light Weight Armor Replacement System (LWARS) product meets the basic requirements of contract N00019-04-C-3147, to be a condition that is endangering performance of the contract. Therefore, unless this condition is cured to the Government's satisfaction by 25 August 2004, the Government may terminate for default under the terms and conditions of the Default (Fixed-Price Supply and Service)(APR 1984) clause 52.249-8.

No later than 25 August, Armour of America must provide and/or demonstrate the following in writing in order for the Government to consider performance of the contract to no longer be endangered:

1. Demonstrate via an independent laboratory or test facility that the LWARS product meets or is less than the maximum weight of 6.79 lbs/sq ft. Provide test results to substantiate your proposed material is capable of at least a V50 ballistic limit of 2900 feet per second against a .30 cal APM2 threat at 30-degree angle of obliquity

2. Demonstrate that the LWARS product will meet or exceed all other test requirements of the contract, especially Environmental and Vibration requirements. This can be done via actual test data or through preliminary analysis of the proposed material.

3. Provide specific detail on maintenance requirements for the new LWARS material

4. Provide the samples which have already been tested to PMA-226 for further analysis. The samples requested are those that demonstrated success and which meet or exceed the weight requirements of the contract. These samples should be shipped in the most expeditious manner to the following:

LTM Incorporated
925 East Main Street
Havelock NC 28532
Attention: Linda Johnston
(252) 464-9382

5. Provide any information with regard to any enhancements this material may provide over and above the minimum requirements provided in the original RFP, inclusive of amendments 0001 – 0004.

Failure to meet these requirements in terms of schedule or ability to meet the minimum contract requirements may result in a termination for Default. The Government realizes that the contract does not contemplate the reimbursement of non-recurring engineering cost and that such costs are inclusive of the above-mentioned items. Thus it is necessary to inform you that you have the option not to pursue fulfilling the terms and conditions of the contract based on the events which have occurred to date. This, however, will result in immediate termination of the contract. If Armour of America (AOA) believes it will produce an LWARS product that meets the minimum requirements of the RFP as amended, but is unable to meet the enhancements proposed with its original material and which were incorporated into the contract statement of work, the Government will be requesting consideration for accepting a product which will require a reduction in scope (removal of enhancements) of the current contract.

You are requested to provide written confirmation and acceptance of the terms of this Cure Notice which provides that you clearly understand the minimum actions required by AOA to avoid a termination of this contract. The written confirmation should be provided to Janice Woehrer at the address cited on this letterhead. You may contact her at (301) 757-6551 if further information is required.

Sincerely,

CAROL A. TISONE
Contracting Officer
Naval Air Systems Command

O

Armour of America

August 4, 2004

To: Janice Woehrer, Contracts, Navair Air Systems Command
Lt. Col. Mitchell Bauman
Linda Johnston, CIV Navair PMA-226
John Gallagher, CIV Navair 4.1.8
Paul Fitzgerald, CIV Navair Depot

Subjects:

- AoA Update
- Comment on Mr. John Gallagher's letter of July 29, 2004 (Enclosed)
- Comment on pages 12 and 14 of MIL-A-46099B (enclosed)
- Summary

A.1 AoA Update

We have to date tested 13 panels in house.

As you know, the primary weight in any ceramic-faced composite armour configuration is the tile, thus making the silicon carbide tile ideal for this application. Silicon carbide tile because of the demand is not stocked by the manufacturer in any various thickness.

AoA has been concentrating on reducing the tile thickness and changing the back-up laminate to properly support silicon carbide tile and reduce weight.

We have been able to get the manufacturer of the tile to grind the silicon carbide tiles to our required thickness needed for each test.

AoA has indeed made very good headway and we are awaiting delivery of one hundred twenty (120) tile of specific thickness in order to achieve additional weight reduction.

A.2 AoA is proceeding to develop the plan for the manufacturing of the forward and aft armour per the existing drawings. We have determined that in order to maintain "interchangeability" each part will have its own "Trim Fixture" and separate "Drill Fixture". Additionally, the fwd and aft engine panels, and will each have their own "Assembly/Drill Fixtures" to keep the three (3) forward and aft parts in their position as related to the hinges both forward and aft.

The tooling effort is proceeding as planned to ensure schedule, as well as, to ensure prototype kit is identical to production ship sets.

B. MIL-A-46099C page 12

During our production meeting, we came across a contradiction (page 13, Table I,) as related to "Thickness" and "Velocity FPS" of steel armour.

P.O. Box 1405, Beverly Hills, CA 90213 USA
1814 W. 135th Street, Gardena, CA 90249 USA
Tel. (310) 532-0690 Fax (310) 532-8696
www.armourofamerica.com

Armour of America

B.1. The provided engine and hydraulic drawings call out the thickness of .250+.02/.00. Therefore using the high of the tolerance @ .270 – the corresponding velocity is 2742 FPS not 2900 FPS.
At .250 the velocity is lower @ 2361 FPS. The velocity at .250 then is even lower at 2361 FPS.

B.2. We most respectfully submit that even if the velocity were shown to be 2900 FPS it does not and never has been possible to get this .30 CAL AP-M2 round to this velocity. Most certainly it is not made anywhere in the world nor can you add enough of the "same" powder to get it to 2900 FPS without the danger of exploding in the rifle when fired. The velocity of 2900 FPS is just not out there.
NOTE:
The hydraulic closet steel thickness is approximately .260 to .270 but the aft engine steel is approximately .315 thick. Even so, .3125 is called out at 2965 FPS (It might as well be 4900 FPS which doesn't exist either). However, the drawings all call out .250 thicknesses.

C.1. Refer to Mr. Gallagher's Letter of July 24, 2004, paragraph marked A,
We concur and refer you to our comments above.

C.2. We also concur and iterate "muzzle velocity is 2760 FPS" which further reinforces our contention of human error in selecting the 2900 FPS velocity that cannot be obtained. And why if the "muzzle velocity" is so much less?

C.3. Refer to Mr. Gallagher's paragraph (1) starting with "The test range"
I agree with China Lake's comment that it is "possible" to "substitute faster burning powder" but please ask "China Lake" if they believe that it is at all possible to be safe in assuming that this meticulous procedure is actually feasible by the bad guys in the field. No ammo manufacturer anywhere makes it and the muzzle velocity is 2760 FPS +25, -25 FPS.

C.4. Refer to Mr. Gallagher's Paragraph 2
We agree 100% to all. Especially to the 2560 FPS at 100 yds and he ***<u>has</u>*** solved the "dilemma". We have not had enough tile to conduct V-50 testing and I will not allow my people to upload this ammo with the same powder as it is quite potentially dangerous and 2900 FPS does not prove anything – it is not a logical threat.

D. MIL-A-46099C Page 14

D.1. Please note at a .270 thickness the velocity is 2645 FPS. The drawing calls out .250+.020. If we are to be using steel specs to build a composite – but that's not the goal as we perceive.

P.O. Box 1405, Beverly Hills, CA 90213 USA
1814 W. 135th Street, Gardena, CA 90249 USA
Tel. (310) 532-0690 Fax (310) 532-8696
www.armourofamerica.com

Armour of America

D.2. If we use the 100 yard velocity of the actual .30 Cal AP M2 round which is 2560 FPS which is realistic, we can also do a V-50 at 30 degrees and probably achieve 2800 FPS plus.
But we can reduce our best weight, so far, downward and stop the 7.62 x 39 (AK-47), 5.56 x 855 Hardcore (M-16), 7.62 x 51 Ball (M-14) and the 7.64 x 54R Hardcore at zero muzzle velocities.

D.3. As Mr. Gallagher knows, we are close and currently making several test panels to shoot on the same day.

E. Summary
AoA is concentrating on weight reduction and interchangeability. We are also, per contract, designing the armour to meet the print specification based on metal armour at .250 +0.02/-0.0 thickness. We believe the recommended velocity per the military specification at 30 degrees is logical and safe. We are available to come to the East Coast for a meeting after in house tests this next week.

Regards,

Arthur G. Schreiber
President

P.O. Box 1405, Beverly Hills, CA 90213 USA
1814 W. 135th Street, Gardena, CA 90249 USA
Tel. (310) 532-0690 Fax (310) 532-8696
www.armourofamerica.com

Armour of America

6 August 2004

From: John Nehmens, Armour of America, General Manager
To: Janice Woehrer, Contracts, Naval Air Systems Command

Subj: Confirmation of Cure Notice Letter dtd: 30 July 2004.

Please be advised that Armour of America (AoA) acknowledges receipt and understands the terms and conditions of Naval Air Systems Command Cure Notice Letter.

R/

John Nehmens
General Manager

P.O. Box 1405, Beverly Hills, CA 90213 USA
1814 W. 135th Street, Gardena, CA 90249 USA
Tel. (310) 532-0690 Fax (310) 532-8696
www.armourofamerica.com

# P

DEPARTMENT OF THE NAVY
NAVAL AIR SYSTEMS COMMAND
RADM WILLIAM A. MOFFETT BUILDING
47123 BUSE ROAD, BLDG 2272, STE 353
PATUXENT RIVER MD 20670-1547

IN REPLY REFER TO

4200
Ser 2.4.3.3./04-139
10 August 2004

Armour of America
Attn: Mr. John Nehmans/Mr. Matt Williams
1814 West 135th Street
Gardena, CA 90249-2584

Gentlemen:

Reference is made to your letter of 4 August 2004 regarding the status of your panel testing and comments regarding MIL-A-46099B.

While we appreciate the status of your in-house testing, we are concerned that you have not provided any information relative to your proposed testing at H.P. White Laboratories. It was my understanding from our last weekly phone conference that you intended to ship the panels to H.P. White on 7 August 2004. As discussed at that time, we intend to have a Government representative witness this testing. Therefore, request you provide this schedule immediately along with the details of the proposed testing.

Regarding your statements concerning MIL-A-46099C and statements contained in e-mails from Mr. John Gallagher, Naval Air Systems Command, the following information is provided:

a. You are correct in your statements regarding MIL- A-46099C. However, this specification pertains to the existing roll-bonded steel armor plate. Your proposed material, Silicon Carbide tile/Kevlar, is not covered by this specification. The appropriate specification is MIL-PRF-46103E which is also referenced in the contract. However, it should be noted that these documents were listed for use as a general guide only. Regardless of what is stated in these documents, the statement of work takes precedence as stipulated in the Federal Acquisition Regulation (FAR) clause 52.215-8, Order of Precedence, set forth in Section I of our contract and it clearly requires your Light Weight Armor Replacement System to be capable of at least a V50 ballistic limit of 2900 feet per second against a .30 caliber APM2 threat at 30-degree angle of obliquity.

b. In your letter, you question not only the validity of the contract specifications but also their feasibility. It is the Government's responsibility to identify its requirements. Regardless of the real or perceived threat, the contract clearly states the requirements that must be met. Any questions pertaining to these requirements should have been raised during the competitive source

selection process. As to their feasibility, our engineers have contacted Mr. Craig Dunn at H.P. White Laboratories and experts at the Naval Air Warfare Center, China Lake, who have all confirmed that they successfully test to these limits on a regular basis.

c. Finally, as discussed during our phonecall this afternoon, you are hereby notified that you are late in delivering Contract Data Requirements List items A004 - Qualification Test Plan, A008 – Configuration Management Plan, and A009 – Maintenance Concept Proposal. At a minimum, you should have already developed the Qualification Test Plan to ensure the appropriate tests are conducted by H.P. White. You shall provide this deliverable no later than the close of business on Friday, 13 August 2004.

As requested previously, please be sure to include Ms. Julie Matheny and myself on all correspondence, including all e-mails. I may be reached at (301) 757-6551, if further information is required. If you are unable to reach me, please contact Ms. Matheny at (301) 757-6570.

Sincerely,

JANICE E. WOEHRER
Contracting Officer
Naval Air Systems Command

# Q

**DEPARTMENT OF THE NAVY**
NAVAL AIR SYSTEMS COMMAND
RADM WILLIAM A. MOFFETT BUILDING
47123 BUSE ROAD, BLDG 2272, STE 353
PATUXENT RIVER MD 20670-1547

IN REPLY REFER TO

4200
Ser 2.4.3.3./04-142
26 August 2004

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Armour of America
Attn: Mr. John Nehmans/Mr. Matt Williams
1814 West 135th Street
Gardena, CA 90249-2584

Ref: (a) Cure Notice, Ser 2.4.3.3/04-135 of 30 July 2004
(b) Contract N00019-04-C-3147, Section C, Paragraphs 4.1 and 4.2.1
(c) Janice E. Woehrer E-mail of 15 July 2004
(d) NAVAIRSYSCOM Ltr Ser 2.4.3.3/04-0123 of 13 July 2004

This letter serves as your notice of termination of Contract N00019-04-C-3147 dated 10 July 2004 in its entirety pursuant to Federal Acquisition Regulation (FAR) clause 52.249-8, Default (Fixed-Price Supply and Service). This termination is effective as of 26 August 2004. Your right to proceed under this contract is terminated. This notice constitutes a decision of the Contracting Officer that the contractor has the right to appeal under the Disputes clause, FAR 52.233-1 of the contract.

This termination is based upon your inability to adequately respond to Reference (a); specifically, your failure to make progress which has endangered performance under said contract because your proposed armor material does not meet the following minimum requirements:

- As stipulated in Reference (a), your proposed armor material must meet or weigh less than a maximum weight of 6.79 lbs/square feet (323.05lbs). The contract also refers to this requirement.

- Per References (a) and (b), all armor panels shall be capable of least a V50 ballistic limit of 2900 feet per second against a .30 caliber APM2 threat at 30-degree angle of obliquity.

This notice also constitutes the Government's decision that the contractor's failure to perform is not excusable. However, in accordance with FAR 52.233-1, you have the right to appeal this decision to the Contracting Officer within the timeframe specified in the clause. The Government reserves all rights and remedies provided by law and regulation under this contract,

4200
Ser 2.4.3.3./04-142

including the right to assess the costs associated with the re-procurement of a Light Weight Armor Replacement System from another source. If the Government incurs re-procurement costs as a result of this termination, a demand letter will be issued to your company to cover such costs.

The Government intends to issue a contract modification to reflect a no-cost settlement. The Government shall not be liable for any costs incurred under this contract as both your proposal and the resultant contract expressly state there is no cost associated with the non-recurring engineering effort. Further, the Government will not reimburse you for any costs incurred related to the qualification test articles since no decision was made regarding the selection of material. Reference (c) applies.

Finally, you must contact Captain Paul Shirley, HMMT-164 MMCO, Camp Pendleton, at (760) 763-0973 or via e-mail at ShirleyPA@3mawcpen.usmc.mil immediately to make arrangements to return the armor panels provided to you previously as Government-furnished material (GFM). As stipulated in Reference (d), all costs associated with the return of this GFM, shall be borne by your company.

You are requested to provide written confirmation and acceptance of the terms of this letter to me no later than 30 August 2004 at the address cited on this letterhead. You may contact me at (301) 757-6551, if further information is required.

Sincerely,

JANICE E. WOEHRER
Contracting Officer
Naval Air Systems Command

Copy to:
DCMA Santa Ana
DFAS Columbus
PMA-226 Cherry Point
Capt. P. Shirley, HMMT-164
NAVAIR SADBU
Small Business Administration, Washington DC Office

**CONTRACTING OFFICER'S DETERMINATION TO ISSUE A TERMINATION FOR DEFAULT TO ARMOUR OF AMERCIA UNDER CONTRACT N00019-04-C-3147**

1. Contract N00019-04-C-3147 was awarded to Armour of America (AOA), Gardena, CA, on 10 June 2004 for a Light Weight Armor Replacement System (LWARS) for the CH-46E helicopter. This contract included a five month period for the Non-Recurring Engineering (NRE) associated with the LWARS design and the manufacture of two qualification test articles. It should be noted, that AOA proposed an accelerated delivery schedule whereby delivery of all production units would be completed no later than October 2005 vice December 2005. The contract also included an option for production units to be exercised no later than seven months after contract award. AOA's proposal was selected from among nine proposals received in response to Solicitation N00019-04-R-0073, a small business set-aside competition. With proper consideration given to the evaluation factors for award, Technical, Past Performance and Price – all of equal importance, AOA's proposal was determined to represent the best value to the Government with a 41% weight reduction (the most important technical subfactor), an accelerated delivery schedule, low past performance risk and the lowest evaluated price among the offerors rated Satisfactory or higher.

2. In accordance with the terms of the contract, a Program Management Review (PMR) was conducted at the contractor's facility on 14 July 2004 with representatives from AOA and the cognizant program office, PMA-226, Cherry Point, NC, in attendance. The purpose of this meeting was to allow AOA to provide the details of their proposed accelerated delivery schedule and technical approach for meeting the requirements of the contract. The brief presented by AOA is included herein as Attachment (1). At the PMR, AOA provided a schedule showing delivery of the two (2) qualification test articles in September 2004 with production commencing in November 2004 vice the RFP requirement of November 2004 and January 2005 respectively. AOA also stated that they were not certain whether their proposed LWARS material, KSP-60 (Ceramic with Kevlar and Spectra backing), could meet the ballistics requirement of the contract without increasing the weight but agreed to prepare a sample armor panel and test to determine the actual weight required to meet the Government's minimum ballistics requirement. The use of other types of material, including silicon carbide (a variant of the KSP-60) and boron carbide, was also discussed at that time. AOA quickly dismissed the idea of using the Boron Carbide however, due to the high cost of this composite material.

3. The Government's minimum requirement set forth in the solicitation required the LWARS to have an aerial density no greater than 6.79 pounds per square foot (psf) or a 35% reduction in weight over the existing rolled steel armor. In addition, the contractor was also required to meet at least a V50 ballistic limit of 2900 feet per second against a .30 caliber APM2 threat at 30 degree angle of obliquity. In their proposal, AOA stated that their proposed LWARS would have an aerial density of 6.2 psf which equates to a 41% weight reduction. On 19 July 2004, AOA conducted their first test fire on the KSP-60 material but was unable to meet the aerial density requirement of 6.79 psf or the minimum ballistics requirement. At this point, AOA stated they could no longer meet the 41% weight reduction set forth in the contract but believed they could meet the 35% weight reduction specified in the solicitation. They further stated that they would prepare and conduct testing on other armor samples using the silicon carbide material and provide the results no later than 27 July 2004. On 22 July 2004, the PCO forwarded a letter, Attachment (2), to follow-up on this deadline. On 26 July 2004, AOA advised that they were now able to meet the 35% weight reduction factor but not the minimum

ballistics requirement. AOA then advised that they had not said that they could meet the ballistics requirement in their proposal and questioned whether such a stringent requirement was necessary. However, AOA also stated they would continue to make additional samples of various thicknesses and would forward the samples to an independent ballistics laboratory, H. P. White Laboratories, for testing. During these discussions, the Government requested that AOA provide notification of the time and date when this testing would be performed so that program office representatives could witness the testing. In addition, the Government also requested AOA provide the Qualification Test Plan, CDRL A005 which, in accordance with the contract, was due on 25 July 2004 and would ensure that future testing would meet the MIL-STD-810F requirements prescribed by the contract. AOA agreed to both requests but complied with neither. In fact, to ensure that the testing would be properly performed, the Government eventually provided their own test plan to AOA on 19 August 2004 after it was learned that AOA had already shipped their test samples to H. P. White Labs. Given the deadline of September 2004 for delivery of the qualification test articles and the continued uncertainty that AOA would be able to identify a material that would meet the Government's requirements, including not only those for weight and ballistics but also the numerous environmental requirements that AOA had not even begun to address, the Contracting Officer issued a cure notice, Attachment (3), to AOA on 29 July 2004 to establish a deadline of 25 August 2004 for AOA to demonstrate their ability to perform. AOA responded to this notice on 4 August 2004 with a letter, Attachment (4), which questioned the minimum ballistics requirements set forth in both the contract and previously in the solicitation. Attachment (5) was forwarded to AOA in response to advise them that it is the Government's responsibility to identify its minimum requirements and that a representative from H.P. White, which by AOA's own admission is an industry leader in the area of ballistics testing, had confirmed that they test to these limits on a regular basis.

4. The Government conducted status meetings with AOA on a weekly basis from the time of award through 10 August 2004. A meeting was also convened on 17 August 2004 but AOA failed to attend and did not address their absence until several days later. On 19 August 2004, AOA advised the Government that H.P. White had completed testing and apologized for not notifying the Government in advance. At that time they requested a meeting with the Government to go over the results. A meeting was held on 24 August 2004 with AOA and representatives from the NAVAIR program office, PMA-226, NAVAIR Contracts and the NAVAIR Legal department. AOA advised that they were unable to meet the weight and ballistics requirements of the contract but believed they could do so in time. The Government again brought up the possibility of using Boron Carbide, a much lighter weight but more expensive material. However, AOA advised they did not want to consider this option.

5. In addition to the above facts, the following factors were considered in this determination:

(a) The terms and conditions of the contract were clearly identified in accordance with applicable law and regulation, including FAR 52.249-8, Default (Fixed Price Supply and Service). It should be noted that the contract was inadvertently awarded with an early version of the statement of work (SOW). However, the solicitation contained the correct version of the SOW and the contractor acknowledged that his proposal was based upon the most current version of the SOW. He also stated that he would accept a modification to incorporate the correct SOW into the contract.

(b) The contractor's failure to successfully perform would seem to be based upon a lack of organization and refusal to accept the Government's minimum requirements. Throughout the entire performance period, the contractor continually questioned the necessity for what they perceived as "too stringent" or "too high" thresholds. It appears that they believed that

once the contract was awarded, the Government would relax it requirements. The Government conducted weekly meetings with the contractor to maintain an open dialogue and mitigate problems as they occurred but the Contractor would not consider other alternatives or suggestions made by the Government.

(c) The LWARS was competed as a small business set-aside. Nine offers were initially received and AOA was selected from among four satisfactory or better offerors. The selection of a second source will be made from among those previously determined to be within the competitive range for award.

(d) AOA has failed to demonstrate any ability to provide an LWARS based upon their proposed enhancements included in the contract or to even meet the Government's minimum program requirements and it does not appear likely that additional time will remedy this deficiency. The CH-46E helicopter is currently being used in Iraq by the U.S. Marine Corps to deploy troops and supplies. Iraqi Freedom Funding (IFF) for the LWARS was appropriated by Congress to improve the performance of the CH-46E and the LWARS is essential to the mission of the Fleet. Therefore, because there is an urgent need for the LWARS, the most appropriate course of action is to proceed with award to another vendor.

(e) Nine proposals were received in response to the instant solicitation. Therefore, AOA's participation in the LWARS program is not essential to successful performance under this program. AOA has stated that the Department of Defense (DoD) has been their primary customer for the past 30 years. Because this termination will be entered in to the DoD Past Performance Information Retrieval System (PPIRS), there could be significant impact to AOA for future business.

(f) The effect of the termination upon AOA's ability to liquidate guaranteed loans, progress payments or advance payments is unknown. However, no progress payments or advanced payments were authorized under this contract.

6. Based upon the preceding information, AOA has failed to make progress under Contract N00019-04-C-3147 and this failure endangers performance of the contract. Therefore, in accordance with FAR 49.402-1, it is determined to be in the best interests of the Government to terminate said contract for default.

Date: 26 August 2004

JANICE E. WOEHRER
Contracting Officer
Naval Air Systems Command

Attachments:
(1) AOA Program Management Review
Brief of 14 Jul 04
(2) NAVAIRSYSCOM Ltr
Ser 2.4.3.3/04-0131 of 22 Jul 04
(3) NAVAIRSYSCOM Ltr
Ser 2.4.3.3/04-0135 of 30 Jul 04
(4) AOA Ltr of 4 August 2004
(5) NAVAIRSYSCOM Ltr
Ser 2.4.3.3/04-0139 of 10 Aug 04

# R

Law Offices of

**M. NEIL CUMMINGS & ASSOCIATES**

A Professional Law Corporation
11150 W. Olympic Blvd.
Suite 1050
Los Angeles, California 90064-1817

Telephone: (310) 914-1849
Facsimile: (310) 914-1853
E-mail: mncassoc@aol.com

September 10, 2004

**VIA FACSIMILE (301) 757-6552**
**VIA CERTIFIED MAIL**
Janice E. Woehrer
Contracting Officer
Naval Air Systems Command
Radm. Moffett Building
47123 Buse Road, Bldg. 2272, Suite 353
Patuxent River, MD 20670-1547

Re: **(A) Contract with Armour of America, Inc.: N00019-04-C-3147 (Armoring of C-46 Helicopters) ("Contract")**
**(B) Your Cure Notice Dated July 30, 2004**
**(C) Your Notice of Termination Dated August 26, 2004**

Dear Ms. Woehrer:

This office represents Armour of America, Inc. ("AOA"). This correspondence concerns the above referenced Contract which AOA entered into with the Department of the Navy for the armoring of the CH-46E aircraft, dated June 10, 2004, and the Navy's attempt to prematurely terminate this Contract on the alleged grounds set forth in your August 26, 2004 letter to AOA.

Armour of America has a 32 year history of successfully performing under contracts with the Navy and other branches of the United States Armed Forces in connection with numerous armor products for multiple applications, including but not limited to airplanes, helicopters, ships, flotation vests, trucks and Humvees. Never in AOA's 32 year history has it received a termination letter from the Navy, or any other branch of the Armed Forces, for either alleged "default" or "convenience". This office has represented AOA for over 15 years, and can attest to the many other contracts under which AOA has successfully designed, developed, manufactured and delivered armored products to the various branches of the Armed Forces, both in the United States and throughout the world.

**<u>1. Design, Development and Production Contract:</u>** With respect to the subject Contract, with all due respect, the Navy does not seem to understand or appreciate the significance of the fact that this Contract contains an initial 5 month design, development and testing phase pursuant to which AOA and the Navy agreed that AOA would engage (at its own cost) in design and development activities so as to develop an armor product for installation on the CH-46E aircraft, which product would be designed and tested to meet the specific and unique velocity and weight criteria set forth in the original RFP and the Contract. This need to develop a product design for testing was expressly understood and reflected in the Contract itself, which calls for a five (5) **month initial period of time during which a first article prototype of the product would be designed, developed, tested and delivered to the Navy by November 10, 2004 (i.e. 5 months from the signing of the Contract).** This is clearly set forth under Paragraph F-2 of the Contract, entitled "TIME OF

D-47

DELIVERY". Accordingly, the Contract contemplates and requires that AOA and the Navy work together in the development of this product, with free and open discussion to be allowed to take place without penalty, much less fear of early termination of the Contract.

__**2. Premature "Cure" and Unilateral "Termination" Notices:**__ Both the Navy's purported "cure notice" of July 30, 2004 (which was prepared by the Navy a mere 6 weeks after the Contract was signed, and only 15 days after the first and only Preliminary Design Review (PDR) meeting, **and 3 ½ months before delivery of a prototype system is required under the Contract)**, as well as the purported "termination" letter dated August 26, 2004, are clearly, based upon the undisputed facts and circumstances of this case, premature, unjustified and fundamentally unfair. There is no evidence that AOA had "failed to make progress" which had "endangered performance under the Contract" by the first deliverable date of November 10, 2004. On the contrary, the evidence all shows that AOA, in reliance on the Contract, had made significant progress since the signing of the Contract, and the PDR meeting, the latter not having taken place until July 14, 2004. And, in fact, in its meeting with the Navy on August 24, 2004, AOA produced testing results from an independent laboratory, H.P. White (a copy of the H.P. White report dated August 20, 2004 is attached hereto as Exhibit A), proving that AOA had already designed and manufactured armor panels and conducted independent tests proving that it had already produced a product which was within 9 feet per second of meeting the 2900 feet per second requirement of the Contract (i.e. the test shows a proven ability to stop the relevant ballistic threat at 2891 feet per second) __and__ within 8 oz/sq. ft. of meeting the weight reduction requirement of the Contract (i.e. the weight of the tested product was 7.52 lbs, with the Contract requiring a weight of 6.79 lbs). Inexplicably, and unjustifiably, however, when the Navy was presented with this testing information at the meeting on August 24, 2004 (in accordance with AOA's performance under the Contract), and reassured by AOA's representatives that the Contract's ballistic and weight requirements would be met and a first article delivered to the Navy by the Contract delivery date of November 10, 2004, the Navy chose to immediately (2 days later) terminate the Contract on the alleged ground of "your (AOA) failure to make progress which has endangered performance under said Contract". Under the undisputable circumstances of this case, the Navy's termination notice was completely unjustified.

__**3. AOA's Continuing Performance:**__ Notwithstanding the Navy's attempt to unilaterally terminate the Contract on August 26, 2004, AOA has continued its performance by continuing to make progress on development of an armor product to meet the requirements of the Contract. **Specifically, at testing conducted at H.P. White on Friday, September 3, 2004, a product incorporating a slightly revised armor configuration of silicone carbide tiles successfully, at 30 degree angles of obliquity, resulted in 2976 fps (high partial at 2982 fps). This clearly indicates that AOA can lower the weight.**

Reducing weight of an armored product without affecting its ballistic capabilities is a very sophisticated process which can only be accomplished through trial and error to meet the Contract requirement of 6.79 lbs/sq. ft. (A copy of the H.P. White report dated September 3, 2004 is attached hereto as Exhibit B.) AOA has been seriously handicapped by the need to have special production runs of silicon carbide tiles at specific close tolerance thicknesses, which is ongoing. In addition, H.P. White, with all the wartime activity, has difficulty fitting AOA into its already overloaded schedule.

__**4. AOA Stands Ready, Willing and Able to Perform for the Original Contract Price:**__ Unquestionably, AOA stands ready, willing and able to render performance under the Contract by producing an armor product which meets the minimum requirements of the Contract by the delivery date of 5 months from the date of the Contract (i.e. by November 10, 2004), and thereafter, installation of such product on the 236 CH-46 aircraft by the required date of October 31, 2005. And, AOA shall do this for the original contract price of $6 million. AOA has already completed the production planning phase, including the drill/trim fixtures and assembly/drill fixtures. To successfully perform under the Contract, however, AOA must receive written assurance from the Navy that it will accept AOA's performance, and any delay in the Navy doing so will simply further delay AOA's performance under the Contract.

**5. Wrongful Accusations Made at August 24, 2004 Meeting:** It is also important to specifically rebut the verbal comments made by the Navy's representatives at the end of the August 24, 2004 meeting to the effect that AOA had somehow engaged in a "slight of hand" or alleged "deceit" in responding to the Navy's RFP and entering into the Contract. These unjustified accusations were, apparently, made based upon the Navy's frustration that AOA had not already designed, manufactured and tested the new prototype armor product. This frustration, however, reflects a basic misunderstanding of the Contract itself (which allows for a 5 month development and testing process after the signing of the Contract) and a fundamental lack of understanding of the sophistication and delays inherent in developing a new armor product design which meets the specific and unique ballistic and weight requirements of the Contract. The Navy is requiring a velocity limit of 2900 feet/second, which, as AOA points out in its August 4, 2004 letter, is arguably unrealistic and unattainable in the real world (although, admittedly, can be attained in a test laboratory such as H.P. White). Granted, the Navy chose not to accept AOA's post-contract suggestions that additional weight reduction can be accomplished (up to 42%) if the ballistic threat is reduced to a real world level of 2750 feet/second, but the fact that AOA made this suggestion is not grounds for the Navy to terminate the contract. Making a suggestion that the ballistic threat be modified in favor of additional weight reduction (which, according to the original RFP and the Navy's verbal representations, was more important to the Navy than the ballistic issue) should not have been interpreted by the Navy as an inability on the part of AOA to design a product during the 5 month development and testing phase which meets the minimum requirements of the Contract.

**6. Rescission of Termination Notice:** AOA respectfully demands that the Navy's notice of termination be rescinded, and AOA allowed the opportunity to develop and deliver to the Navy the armor products required by the Contract. AOA stands ready, willing and able to do so for the original Contract price, and its 32 years of experience, goodwill and successful performance under its many military contracts deserves this consideration from the Navy. A failure on the part of the Navy to rescind the notice, and allow AOA's performance, will cause immediate and future damages and irreparable harm to AOA...not only in the context of this Contract, but also in the context of AOA's ability to compete on an equal footing with its competitors for military business in the future. AOA strongly urges you to re-examine this situation, and do what is fair and what is right under this Contract.

Very Truly Yours,

M. Neil Cummings, Esq.

MNC: jk
CC: DCMA Santa Ana
DFAS Columbus
PMA-226 Cherry Point
Capt. P. Shirley, HMMT-164
NAVAIR SADBU
Small Business Administration
Washington DC office

S

**DEPARTMENT OF THE NAVY**
NAVAL AIR SYSTEMS COMMAND
RADM WILLIAM A. MOFFETT BUILDING
47123 BUSE ROAD, BLDG 2272, STE 353
PATUXENT RIVER MD 20670-1547

IN REPLY REFER TO

4200
Ser 2.4.3.3./04-167
17 September 2004

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Armour of America
Attn: Mr. John Nehmans/Mr. Matt Williams
1814 West 135th Street
Gardena, CA 90249-2584

Gentlemen:

This letter is forwarded in response to your request of 10 September 2004 to reconsider the termination for default of Contract N00019-04-C-3147 issued via my letter Ser 2.4.3.3/04-142 of 26 August 2004. The Government has reviewed the facts pertaining to its determination and finds that no further action is required at this time. That being said, your request contained several inaccuracies. However, prior to responding to those inaccuracies, it is of the utmost importance to emphasize the environment we find ourselves in at this time. The CH-46E helicopter is currently deployed in the war against terrorism and is transporting our Marines to some of the most dangerous places existing in the world today. As such, it is imperative that the Light Weight Armor Replacement System (LWARS) that is the subject of the above referenced contract be designed and produced immediately to reduce the weight of the CH-46E so that additional Marines and critical supplies can be delivered when and where they are needed. In other words, time is of the essence.

The following information is provided in response to the inaccuracies stated in your letter:

It is true that the solicitation afforded some limited time for design and development. However, by your letter of 6 May 2004, you offered an accelerated delivery schedule that was accepted by the Government and included in the contract. In addition, the details of your accelerated delivery schedule were included in your company's brief, which you presented to the Government at the Program Management Review (PMR) on 14 July 2004. In accordance with your briefing slides, the qualification test articles were to be delivered in September 2004. Unfortunately, it was at this same PMR that you informed the Government that you would not be able to deliver an armor kit that met the requirements set forth in your proposal, i.e. an aerial density of 6.2 pounds per square foot (psf) or a 41% weight reduction. It was your acknowledgment that you could not meet your proposal requirements coupled with your decision to switch to a material that you did not propose (or for that matter was evaluated during the source selection process) that lead the Government to determine that you were failing to make progress and that failure endangered performance of the contract (*See Federal Acquisition Regulation (FAR) Part 49.402 generally*).

Thus, taking into account the high degree of importance of this contract, the short design period, the total period of performance of the contract (approximately one year) and the fact that the contract was

4200
Ser 2.4.3.3./04-167

competitively awarded, the Government properly and reasonably executed a cure notice to your company. You received and accepted such notice with no objections and in fact, your company furnished the time line for which the Government's concerns were to be cured (It should be noted that this timeline afforded you more time than that set forth in the FAR). It is also important to note that your request uses the word "purported" in front of cure notice and termination letter. Please make no mistake, the Government's correspondence concerning these two points was definitive and your company acknowledged receipt.

With regard to the meeting on 24 August 2004, it was held in order for you to present evidence suitable to cure your failure to make progress. Such evidence was not presented nor were you, by your own admission, able to provide the Government with a level of confidence that the product you proposed would reach the Fleet by the time specified in the contract. At this meeting, you indicated that your proposed armor material would not meet the contract requirement of at least a V50 ballistic limit of 2900 feet per second against a .30 caliber APM2 threat at 30 degree angle of obliquity. Furthermore, you indicated that you intended to meet a lesser standard which was not indicated by your proposal. Even if you had intended to submit an alternate proposal, said alternate proposal would not have been accepted as delineated in Section L-2, Paragraph (A) of Solicitation N00019-04-R-0073,. You also made it clear that your product would not be able to meet the minimum ballistics requirement with an aerial density of 6.2 psf. The evidence you presented during the 24 August 2004 meeting did not cure the fact that you were failing to make progress and that failure endangered your performance under the contract and in fact, you indicated that you could not meet the contract specification requirements.

In conclusion, the Government's decision as well as the requirements set forth in the LWARS solicitation N00019-04-R-0073, remain firm. Your failure to make progress endangered your performance under the contract, which in turn endangers our ability to procure a critical product needed by the Marine Corps. The essential nature of this product is demonstrated by the fact that Congress set aside funds for this express purpose.

Please contact me at (301) 757-6551 if you wish to discuss this matter further.

Sincerely,

JANICE E. WOEHRER
Contracting Officer
Naval Air Systems Command

# T

**DEPARTMENT OF THE NAVY**
NAVAL AIR SYSTEMS COMMAND
RADM WILLIAM A. MOFFETT BUILDING
47123 BUSE ROAD, BLDG 2272, STE 353
PATUXENT RIVER MD 20670-1547

IN REPLY REFER TO

4200
Ser 2.4.3.3./04-197
28 October 2004

Armour of America
Attn: Mr. Arik Arad
1814 West 135th Street
Gardena, CA 90249-2584

Ref: (a) Federal Acquisition Regulation Clause 52.249-8, Default
(b) Termination for Default, Ser 2.4.3.3/04-142 of 26 August 2004

As stipulated in References (a) and (b), the Government is entitled to recoup the costs associated with the re-procurement of a Light Weight Armor Replacement System (LWARS) for the CH-46E helicopter. This cost is $2,099,438, which includes the delta contract costs to procure 147 LWARS units plus the administrative cost to put the new contract in place. While we are certain that our decision to terminate Contract N00019-04-C-3147 for default would be sustained under any ensuing legal action, we believe that the time and dollars would be more wisely spent by reaching a settlement agreement with your company. As such, the Government would be willing to discuss the possibility of executing a bilateral modification to the aforementioned contract that would: end the contract, rescind the default termination, contain language whereby your company would release any potential claims it would have against the Government and contain your agreement to pay the Government re-procurement costs as specified above.

If this acceptable to you, please provide written confirmation and acceptance of the terms of this letter to me no later than 3 November 2004 at the address cited on this letterhead. You may contact me at (301) 757-6551, if further information is required.

Sincerely,

JANICE E. WOEHRER
Contracting Officer
Naval Air Systems Command

# U

DEPARTMENT OF THE NAVY
NAVAL AIR SYSTEMS COMMAND
RADM WILLIAM A. MOFFETT BUILDING
47123 BUSE ROAD, BLDG 2272, STE 353
PATUXENT RIVER MD 20670-1547

IN REPLY REFER TO

4200
Ser 2.4.3.3./04-220
15 November 2004

Armour of America
Attn: Mr. Arik Arad
1814 West 135th Street
Gardena, CA 90249-2584

Mr. Arad:

The information contained in your previous correspondence does not identify any new information pertaining to events leading to the termination for default; nor does it appear you are willing to consider payment of the re-procurement costs to which the Government is entitled by federal regulation. The government position with regard to the termination decision is firm, unless new information is brought to light. However, if you would be willing to reconsider your position relative to the re-procurement costs, we would be willing to entertain a meeting on either 22 or 23 November 2004.

Please contact me at (301) 757-6551 if you wish to discuss this matter further.

Sincerely,

JANICE E. WOEHRER
Contracting Officer
Naval Air Systems Command