IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ARMOUR OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1731C |
| v. | ) | (Chief Judge Edward J. Damich) |
| | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ARMORWORKS, | ) | |
| | ) | |
| Intervenor. | ) | |

DEFENDANT'S STATUS REPORT

Pursuant to this Court's April 13, 2006 order, defendant provides the following status report regarding the Government's position with respect to the assertion of ArmorWorks's that documents produced to Armour of America contain proprietary information.

Defendant provided ArmorWorks 's counsel with the ten yellow binders containing ArmorWorks's documents by courier on April 28, 2006. ArmorWorks's counsel returned the documents to the Government on May 12, 2006. Approximately 4,000 pages of the documents were marked as containing allegedly proprietary information. The alleged proprietary information was marked with red brackets except when the entire page contained allegedly proprietary information. In those cases, the notation "All" appears in the bottom right-hand corner of the document.

Counsel for ArmorWorks provided no explanation for ArmorWorks's decision to mark information contained in the subject documents as containing proprietary information. When

Government counsel inquired as to why no rationale was provided in support of ArmorWorks's position that the marked material was indeed proprietary, counsel indicated that an explanation was not required by the Court.

Without a definition of the term "proprietary information," it is difficult, if not impossible, to understand ArmorWorks's position in this matter. However, using common definitions of "proprietary information," the Government is unable to discern what, if any, information designated by ArmorWorks is in fact proprietary.

For example, Black's Law Dictionary defines "know-how" as "the information, practical knowledge, techniques, and skill required to achieve some practical end, esp. in industry and technology; know-how is considered intangible property in which rights may be bought and sold." Black's Law Dictionary 888 (8th ed.2004). Black's definition of "know-how" encompasses the definition of proprietary information. "Proprietary Information" is also defined as a set of engineering and technical documentation as well as manufacture secrets that in the aggregate with the unique components is necessary and sufficient for manufacture of the product at issue.

The Trade Secrets Act, 18 U.S.C.A. § 1839(3) defines "trade secret" as follows:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through

proper means by, the public . . .

Another definition of proprietary information that could be used is information constituting detailed manufacturing or process data to mean technical data that describe the steps, sequences, and conditions of manufacturing, processing or assembly used by the manufacturer to produce an item or component or to perform a process. See 48 C.F.R. 252.227-7013 (5)

The Court in Public Citizen Health Research Group v. Food and Drug Admin., 704 F.2d 1280 (C.A.D.C.,1983), in construing the term "trade secret" in Exemption 4 of the Freedom of Information Act (FOIA"), noted that the common law definition of trade secret requires a direct relationship between the information at issue and the productive process, and defined trade secret as "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort. Public Citizen Health Research Group, 704 F.2d at 1289.

Government counsel provided copies of the ArmorWorks's designation of proprietary information to agency counsel and to three Navy engineers who were involved in the contracts that are the subject matter of this case for their review. During a subsequent conference call, the engineers informed Government counsel that the information contained in those documents, either considered in isolation, or in combination, was not sufficient to determine the processes used by ArmorWorks in developing and manufacturing the composite material that was provided to the Government under its contract. For example, no data pertaining to the temperatures or pressures used by ArmorWorks in curing the material, a critical step in the manufacturing process, is included in the allegedly proprietary information contained in the documents. In

addition, the Navy did not purchase the any of the level three drawings generated by ArmorWorks during its performance under the contract. According to the Navy engineers, the level three drawings contain the detailed information that would be necessary to replicate ArmorWorks's product. The Navy was simply procuring a product that met the wight and ballistics specifications as set forth in its contract with ArmorWorks. Without data and knowledge concerning the manufacturing processes used; a competitor would not be able to replicate ArmorWorks's product. Moreover, at no time did any employee of ArmorWorks indicate to the Navy personnel involved in the contract that any of the data and information was considered proprietary by ArmorWorks.

Significantly, no document generated by ArmorWorks after contract award bears the legend "Limited Rights Information," a designation that was contractually required in order for ArmorWorks to protect its allegedly proprietary information from subsequent use or disclosure by the Government.[1]

In summary, the Navy was given no data or information concerning ArmorWorks's

---

[1] The contract included 48 C.F.R. 252.227-7013 that provides in pertinent part as follows:

> (f) Marking requirements. The Contractor . . . may only assert restrictions on the Government's rights to use, modify, reproduce, release, perform, display, or disclose technical data to be delivered under this contract by marking the deliverable data subject to restriction.
>
> > (1) General marking instructions. The Contractor . . . shall conspicuously and legibly mark the appropriate legend on all technical data that qualify for such markings. The authorized legends shall be placed on the transmittal document or storage container and, for printed material, each page of the printed material containing technical data for which restrictions are asserted. When only portions of a page of printed material are subject to the asserted restrictions, such portions shall be identified by circling, underscoring, with a note, or other appropriate identifier. . . .

manufacturing techniques during ArmorWorks's performance under the re-procurement contract. No such information was given and no such information was sought.

Examples of information that ArmorWorks has indicated is "proprietary" include such routine information as where tests a were to be performed, see e.g. "As a policy, we do not conduct ballistic testing in-house for qualification-type data, this is conducted by independent third parties (hence the need for a separate ballistic test plan," NAV07111, and cost information, see e.g. "The cost for conducting 100% ultrasonic inspection on LWARS armor panels during manufacturing in included in our proposal pricing. Our NDI [non-destructive testing] systems inspection are in place and part of our normal practice." NAV07117.[2]

The Government's position is that the appropriateness of ArmorWorks's designation of proprietary information, although collateral to this litigation, should be resolved before the contract dispute between Armour of America can proceed because the ArmorWorks's information will be necessary for the Government to both defend against Armour of America's

[2] In addition, routine correspondence and scheduling information, see e.g. NAV04987, and evaluation information such as the overall ratings received by ArmorWorks (Overall Technical Rating: Outstanding; Overall Proposal Risk: Low), see e.g. NAV07771, has been designated as proprietary.

claim and to prosecute our claim for re-procurement costs against Armour of America..[3]

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

Attorneys for Defendant

Dated: May 15, 2006

---

[3] Initially, ArmorWorks objected to Government counsel providing the documents with the proposed redactions to counsel for Armor of America. Government counsel informed counsel for ArmorWorks that no compromise could be made without the concurrence of Armour of America because it was incumbent upon both parties to insure that all information necessary to defend against and prosecute their respective claims was available, Counsel for ArmorWorks then agreed to release of the documents to Armour of America contingent upon Armour of America agreeing to certain conditions. Government counsel sent the documents to counsel for Armour of America t by Federal express with the notation that the documents not be reviewed until the issue between ArmorWorks and Armour of America was resolved. The Government is not aware of what Armour of America's position is regarding this matter.