**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ARMOUR OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES<br><br>Defendants.<br><br>and<br><br>ARMORWORKS, LLC<br><br>Intervenor | ) | No. 04-1731C<br>(Chief Judge Edward J. Damich) |

**INTERVENOR'S RESPONSE TO DEFENDANT'S MEMORANDUM REGARDING PROTECTIVE ORDER ISSUES**

Dated: August 11, 2006

HOLLAND & KNIGHT LLP

Steven D. Gordon
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955-3000 – phone
(202) 955-5564 – fax

*Counsel for Intervenor ArmorWorks, LLC*

Of Counsel:

David J. Craig
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
(202) 955-3000 – phone
(202) 955-5564 – fax

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. DISCUSSION ..... 2

A. WHETHER ISSUANCE OF A PROTECTIVE ORDER CONSTITUTES A DETERMINATION THAT THE PROTECTED INFORMATION IS PROPRIETARY FOR PURPOSES OTHER THAN THE INSTANT LITIGATION. ..... 2

B. WHAT CRITERIA GOVERN THE COURT'S DETERMINATION WHETHER INFORMATION IS PROPRIETARY OR NOT. ..... 4

1. Trade Secret and FOIA Standards ..... 6

2. Proposal Information ..... 8

3. Rights in Technical Data ..... 8

4. Additional Considerations ..... 10

C. WHAT PROCEDURES THE COURT SHOULD ADOPT TO DETERMINE WHICH OF INTERVENOR'S PROPOSED REDACTIONS ARE PROPRIETARY AND WHICH ARE NOT, GIVING DUE WEIGHT TO CONSIDERATIONS OF ECONOMY AND EFFICIENCY ON BEHALF OF THE COURT AND THE PARTIES. ..... 11

III. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander Grant & Co. Litigation*, 820 F.2d 352 (11th Cir. 1987) ............ 2

*Bell Helicopter Textron, ASBCA No. 21,192*, 85-3 B.C.A. ¶ 18,415, 1985 WL. 17050 (1985) ............ 9

*Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108 (3rd Cir. 1986) ............ 2, 12

*Crane Helicopter Servs., Inc. v. United States*, 56 Fed. Cl. 313 (2003) ............ 6, 7

*Dana III v. E.S. Originals, Inc.*, 342 F.3d 1320 (Fed. Cir. 2003) ............ 4

*Ervin and Associates, Inc. v. United States*, 59 Fed. Cl. 267 (2004) ............ 9

*Franklin Savings Corp. v. United States*, 56 Fed. Cl. 720 (2003) ............ 3

*Mallinckrodt Inc. v. West*, 140 F. Supp. 2d 1 (D.D.C. 2000) ............ 6, 7

*McDonnell Douglas Corp. v. Air Force*, 375 F.3d 1182 (D.C. Cir. 2004) ............ 6

*McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162 (D.C. Cir. 1995) ............ 6

*Mother's Restaurant Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566 (Fed. Cir. 1983) ............ 3

*Smith v. Bic Corp.*, 869 F.2d 194 (3d Cir. 1989) ............ 4

*Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505 (1996) ............ 2, 12

*Uniroyal Chemical Co., Inc. v. Syngenta Crop Protection*, 224 F.R.D. 53 (D. Conn. 2004) ............ 2

## STATUTES

5 U.S.C. § 552 (b)(4)(2006) ............ 6

Ariz. Rev. Stat. § 44-401 ............ 7

Trade Secrets Act, 18 U.S.C. § 1905 (2006) ............ 6

## I. INTRODUCTION

Pursuant to a status conference held on May 16, 2006, the Court issued a Temporary Protective Order to safeguard certain information of Intervenor ArmorWorks LLC ("ArmorWorks") that may be competition sensitive, proprietary, confidential, or otherwise protectable. The Court also directed the parties to file memoranda addressing the following issues:

1. Whether issuance of a protective order constitutes a determination that the protected information is proprietary for purposes other than the instant litigation;

2. What criteria govern the Court's determination whether information is proprietary or not; and

3. What procedures the Court should adopt to determine which of Intervenor's proposed redactions are proprietary and which are not, giving due weight to considerations of economy and efficiency on behalf of the Court and the parties.

The Court's protective order covers approximately 1400 pages that ArmorWorks has marked as containing proprietary information. ArmorWorks seeks to protect this information from dissemination to its direct competitor, Armour of America ("AOA"), or to the public, while limiting its involvement in this matter as much as possible and avoiding litigation about the protection of its proprietary information. Toward that end, ArmorWorks proposed the imposition of an "umbrella" or "blanket" protective order of the type the Court now has imposed. ArmorWorks further proposed that the protected information would be available to counsel for AOA and the Government to prepare their respective cases. Should counsel for either party conclude that certain documents containing protected information are needed for the litigation, then the protected information could be redacted. If redaction is not feasible, then (and only then) would ArmorWorks need to get involved. The matter would either be resolved between counsel or else by the Court. Given the very limited relevance of any ArmorWorks documents

to the resolution of this case – ArmorWorks is merely the successor contractor on the same contract for which the Government terminated AOA for default – there should be, at most, a handful of protected documents that will need to be addressed by counsel or the Court.

In contrast, the Government has taken the position that it wants to resolve, as a preliminary matter, the status of each and every one of the 1400 pages of documents that ArmorWorks has marked as containing proprietary information. It continues to take that position in the memorandum it has filed with the Court on July 21, 2006 ("Gov. Mem."). The Government proposes a meeting among the parties and their experts to attempt to resolve the issue "solely for the purpose of this litigation," with the Court becoming involved if the parties cannot agree. ArmorWorks believes that this approach is misguided and would result in wasting the time and resources of ArmorWorks and this Court, not to mention AOA and the Government. Further, it would needlessly delay the resolution of this action.

## II. DISCUSSION

### A. Whether issuance of a protective order constitutes a determination that the protected information is proprietary for purposes other than the instant litigation.

The protective order that the Court has issued – and that ArmorWorks seeks to maintain in place -- is an "umbrella" or "blanket" protective order of the type used by the federal courts in cases involving a large number of documents. *See Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1123 (3rd Cir. 1986); *Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987) (noting umbrella order should be used where document-by-document review is unfeasible); *Uniroyal Chemical Co., Inc. v. Syngenta Crop Protection*, 224 F.R.D. 53, 56 (D. Conn. 2004) ("Courts may choose to utilize an 'umbrella approach' when a large number of confidential documents are at issue"); *Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505, 508 (1996) ("history has confirmed the tremendous saving of time effected by such an approach.")

With a blanket protective order, the court permits the party seeking protection to make an initial, good faith designation of documents to be protected. The other party(ies) subsequently may indicate particular documents it believes are not confidential and the party seeking protection then must justify the continued protection of the protective order with respect to those documents.

The issuance of a blanket protective order does not constitute a determination that the protected information is proprietary. It simply indicates that there is good cause to protect the information pending a detailed review of particular documents. However, if the Court makes specific rulings regarding the proprietary nature of particular documents or information following litigation of the issues, that ruling will constitute a final determination regarding the proprietary status of that information for purposes other than the instant litigation.

Whether any decisions by this Court would constitute a binding determination is governed by the doctrine of issue preclusion. "Under the doctrine of issue preclusion, traditionally called 'collateral estoppel,' issues which are actually and necessarily determined by a court of competent jurisdiction are conclusive in a subsequent suit involving the parties to the prior litigation." *Mother's Restaurant Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566 (Fed. Cir. 1983). The principle behind issue preclusion is that a party who has litigated and lost should be bound by that decision and cannot demand to litigate the issue again. *Id.*; *see also Franklin Savings Corp. v. United States*, 56 Fed. Cl. 720, 736 (2003). The Federal Circuit applies a four part test for determining whether issue preclusion applies: (1) the issues are identical to those in the prior proceeding; (2) the issues were actually litigated; (3) the determination of the issues was necessary to the resulting judgment; and (4) the party defending against preclusion had a full and fair opportunity to litigate the issues. *Franklin Savings*, 56 Fed. Cl. at 736.

If the Court adjudicates whether any particular documents contain proprietary information, that ruling will constitute a final judgment with preclusive effect. "[F]or purposes of issue preclusion . . . final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect. . . .The test for finality is whether the prior decision was 'adequately deliberated and firm' or "avowedly tentative," and whether the parties were fully heard in the prior proceeding." *Dana III v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003).

Indeed, any ruling by the Court that certain information is not proprietary would necessarily be final for all practical purposes because, once such information is disclosed to the public, that information can never be confidential or secret again. Accordingly, it is clear that ArmorWorks could pursue an interlocutory appeal of such a decision under the "collateral order" doctrine. *Smith v. Bic Corp.*, 869 F.2d 194, 198-99 (3d Cir. 1989).

While ArmorWorks would be permanently bound by the Court's determination that certain information is not proprietary, the Government seeks to avoid the converse result:

> If this Court makes a judicial determination that some, or all, of the information that ArmorWorks . . . claims is proprietary information does in fact constitute proprietary information, the Court should make it clear that such a determination is only binding upon the parties for the limited purpose of the instant litigation.

(Gov. Mem. at 1.) The Government cites no authority for this one-sided end run on the law of issue preclusion, and the Court should reject it accordingly.

**B. What criteria govern the Court's determination whether information is proprietary or not.**

The criteria that govern whether particular ArmorWorks information is proprietary or otherwise entitled to protection will vary depending on the nature of the information. The documents at issue here include proposal documents, source selection materials discussing

proprietary ArmorWorks information, contract deliverables containing technical data, correspondence, and various other materials.

The Court would need to consider first whether particular information constitutes a trade secret or is otherwise privileged or confidential. The Court would also need to consider the circumstances under which the information was provided to the Government, including whether the information was provided as part of ArmorWorks' proposal, as a contract deliverable during performance, or through some other communication between the parties. As part of this evaluation, the Court would need to analyze the solicitation and contract provisions. The Court would also need to consider the dealings between the parties during both contract formation and performance. Finally, the Court would need to evaluate communications between the parties as well as internal government communications to determine whether such communications contain proprietary information.

In addressing this issue, the Government provides brief definitions of "proprietary information" and "trade secret." (Gov. Mem. at 2.) Although ArmorWorks does not dispute that these definitions are correct, they are of limited utility in evaluating ArmorWorks' documents. The Government assumes that proprietary information or trade secrets necessarily relate to the productive or manufacturing process, and does not address all, or even most, of the relevant considerations that are implicated by the documents at issue here. The Government's definition of "proprietary information" appears to based entirely upon the DFARS definition of "Detailed manufacturing or process data," as provided by the DFARS Rights in Technical Data-Noncommercial Items Clause, DFARS 252.227-7013 (a)(5). This definition does not come close to addressing all of the information that is at issue here.

The full range of criteria that the Court would need to consider is discussed below.

**1. Trade Secret and FOIA Standards**

The Freedom of Information Act standards furnish a starting point when determining whether a contractor's information should be protected from disclosure (a point with which the Government appears, at least tacitly, to agree). *See Mallinckrodt Inc. v. West*, 140 F.Supp.2d 1, 4 (D.D.C. 2000). Pursuant to FOIA exemption 4, an agency is exempted from disclosing "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552 (b)(4)(2006). Federal Courts have consistently held that FOIA exemption 4 is coextensive with the Trade Secrets Act, 18 U.S.C. § 1905 (2006), "effectively [prohibiting] an agency from releasing information subject to the exemption." *McDonnell Douglas Corp. v. Air Force*, 375 F.3d 1182, 1185-86 (D.C. Cir. 2004) (*citing McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162, 1164 (D.C. Cir. 1995)). Thus, not only is an agency prohibited from disclosing a contractor's trade secrets, it is also prohibited from disclosing commercial or financial information that is privileged or confidential.

With regard to trade secrets, because there is no federal common law of trade secrets, the federal courts will look to state law. *Crane Helicopter Servs., Inc. v. United States*, 56 Fed. Cl. 313, 322 (2003). Although the applicable state law in this matter has not been addressed, both Arizona (ArmorWorks' principal place of business) and California (AOA's principal place of business) have adopted the Uniform Trade Secrets Act. The Arizona version defines "trade secret" as:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique or process, that both:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

> by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ariz. Rev. Stat. § 44-401. The *Restatement (Third) of Unfair Competition* also provides the following definition of trade secret:

> A trade secret is any information that can be used in the operation of a business or other enterprise and this is sufficiently valuable and secret to afford an actual or potential economic advantage over others.

*Restatement (Third) of Unfair Competition*, § 39 (2006).

Thus, the applicable definition of trade secret is not necessarily limited to information having a direct relationship with the "productive process," as the Government appears to assert. Moreover, the secrecy requirement is not necessarily absolute. *Crane Helicopter*, 56 Fed. Cl. at 323-24. "The UTSA does not require absolute secrecy, instead requiring only that the material not be readily ascertainable by people who could obtain economic value from the information." *Id.* at 324.

When considering whether commercial or financial information should be protected under FOIA exemption 4, the Court must determine whether the information is "privileged or confidential." The federal courts have articulated two separate standards, depending on whether the information was voluntarily or involuntarily provided to the Government. *Mallinckrodt,* 140 F.Supp.2d at 4. Information that was voluntarily provided to the Government faces a lower threshold to prevent disclosure. (*Id.*) Financial or commercial information provided to the government on a voluntary basis is "confidential" under Exemption 4 if it is the kind of information that customarily would not be released to the public by the submitter. (*Id.*) Where information was provided involuntarily, it will be considered confidential if the provider can

show that the disclosure would either (1) impair the government's ability to obtain necessary information in the future; or (2) cause substantial harm to the competitive position of the person from whom the information was obtained. (*Id.* at 5.)

**2. Proposal Information**

Many of the documents that ArmorWorks marked as containing proprietary information consisted of either its proposal information or source selection and evaluation materials that discuss its proposal and pricing information. These materials implicate various procurement regulations that protect contractor proposal information. First, FAR 3.104-4 prohibits the disclosure of proposal information, even after contract award, where such disclosure is otherwise prohibited by law. Thus, to the extent any information contained within ArmorWorks' proposal or the source selection materials constitute "trade secrets and commercial or financial information obtained from a person and privileged or confidential," disclosure of such information is prohibited under the Trade Secrets Act, as discussed above. Similarly, FAR 24.202 prohibits entirely the disclosure under FOIA of any proposals not incorporated by reference into a contract. Finally, DFARS 252.227-7016, which is incorporated into the ArmorWorks contract by reference, generally prohibits the Government's disclosure of proposal information outside the Government. These provisions all present additional criteria that the Court would need to consider in making a determination as to whether particular ArmorWorks information is proprietary.

**3. Rights in Technical Data**

The contractual rights that the Government has acquired in ArmorWorks' technical data is another issue that the Court would need to consider. The Government zeroes in on this issue and implies that contract deliverables are the only category of documents with which the Court

would need to concern itself. To the contrary, however, the number of contract deliverable documents that contain technical data which ArmorWorks has marked for redaction represent a very small portion of the total documents at issue.

Pursuant to the FAR and DFARS, the Government acquires various levels of rights in "data" or "technical data" that is delivered to the Government pursuant to a contract. The DFARS and its contract provisions establish a framework of three standard levels of technical data rights, Limited Rights, Government Purpose Rights, and Unlimited Rights. Generally the category of rights that the Government acquires depends upon which party paid for the development of the data.

The DFARS (and FAR) also require contractors to mark their data with prescribed restrictive legends in order to preserve the Limited Rights or Government Purpose Rights protection for their technical data. Where a contractor fails entirely to mark its data with the appropriate restrictive legend, the contractor will forfeit its right to such data, and the Government will acquire unlimited rights. However, where a contractor marks its technical data with restrictive legends other than the prescribed legends, the contractor does not necessarily forfeit its rights to the data. Where an incorrect legend is applied by the contractor, the contracting officer has an affirmative obligation to notify the contractor. *See* DFARS 252.227-7013 (contained in the ArmorWorks contract). Where the contracting officer fails to do so, the contractor retains its rights in the proprietary data. *See Bell Helicopter Textron*, ASBCA No. 21,192, 85-3 BCA ¶ 18,415, 1985 WL 17050 (1985); *Ervin and Associates, Inc. v. United States*, 59 Fed.Cl. 267, 296 (2004) (citing *Bell Helicopter Textron*).

The Government asserts that ArmorWorks did not mark any document generated by ArmorWorks after contract award with the prescribed "Limited Rights Information" legend.

ArmorWorks did, however, mark multiple contract deliverables as "proprietary." It does not appear that the contracting officer notified ArmorWorks about this issue or otherwise challenge the sufficiency of its restrictive legend. The Court would need to conduct a factual inquiry to resolve the issue of whether ArmorWorks has retained its rights in this category of proprietary data.[1]

**4. Additional Considerations**

Finally, the Court would need to consider the dealings between ArmorWorks and the Government during both contract formation and performance to assess the effect of such dealings on the proprietary status of ArmorWorks' information. The Court would need to evaluate whether the parties met all conditions precedent with regard to their contract and whether all relevant contract clauses are properly contained within the contract. The Court would also need to consider the communications between the parties, including assessing whether any implied contracts were formed regarding the protection of ArmorWorks' proprietary information.

Finally, a large number of the documents in issue consist of government emails, correspondence, and internal reports that reference proprietary ArmorWorks information. The Court may also need to conduct factual inquiries to ascertain the source of this information to determine whether it retained its proprietary character.

---

[1] The contract also contains FAR 52.227-23 Rights to Proposal Data (technical). Although this clause purports to obtain for the Government "unlimited rights" to all technical data contained in ArmorWorks' proposal, FAR 27.407 (b) specifically requires that "the prospective contractor must be specifically afforded the opportunity to exclude technical data . . . and the contract file must reflect that fact." It does not appear that any such opportunity was afforded ArmorWorks. Thus, in considering the implications of this clause, the Court would need to conduct a factual inquiry as to whether the Government met its obligations. Moreover, even if that is the case, this provision only applies to "technical data" in the proposal.

**C. What procedures the Court should adopt to determine which of Intervenor's proposed redactions are proprietary and which are not, giving due weight to considerations of economy and efficiency on behalf of the Court and the parties.**

This action involves a dispute between AOA and the Government over the default termination of AOA on a government contract. ArmorWorks is merely the successor contractor on the same contract. Given the tangential role of ArmorWorks with respect to this issues in this action, it is evident that documents containing ArmorWorks' proprietary information will be of little or no relevance. At most, a handful might become appropriate exhibits during depositions or at trial.

The key issue before the Court is whether the parties and the Court now will embark on lengthy and expensive collateral proceedings to resolve the proprietary status of each and every document ArmorWorks has marked for protection or whether, instead, the Court will limit this process to the small number of documents, if any, that actually prove relevant and need to be shown to witnesses during discovery[2] or introduced as exhibits at trial (if there is one). The most economical and efficient approach obviously is the latter rather than the former.

Accordingly, ArmorWorks proposes that the existing umbrella protective order remain in place. The protected information would be available to counsel for AOA and the Government to prepare their respective cases.[3] Should counsel for either AOA or the Government decide that certain documents containing protected information are needed for this litigation, the protected information could simply be redacted, according to the redactions ArmorWorks has *already*

[2] And then only witnesses not admitted under the protective order. Because procuring agency personnel are categorically admitted and all or most experts would likely be admitted, the number of affected witnesses would be minimal.

[3] ArmorWorks is unclear whether counsel for AOA has yet formally complied with the requirements of the protective order to gain access to the protected material. ArmorWorks has no objection to her having such access provided that the applicable provisions of the protective order are complied with.

proposed. Only if redaction is not feasible would counsel for ArmorWorks need to get involved. The matter would be resolved between counsel or, as a last resort, by the Court. This approach will allow the parties to proceed with their discovery and trial preparation with minimal, if any, disruption, and far less disruption or expense than litigating the proprietary nature of each of the 1400 documents covered by the protective order, as the Government proposes.[4]

The advantages of the umbrella approach were outlined 20 years ago by the Third Circuit in its *Cipollone* decision:

> [T]he umbrella order approach is less time-consuming and burdensome to the parties and the court than the document-by-document method. In a very large case, the document-by-document approach may be so costly that it may make large-scale litigation too expensive for all but the most affluent parties. Moreover, the time that it would take a judicial officer to rule on the protectability of thousands of documents could cripple the court. By contrast, the umbrella order will encourage efficiency and allow litigation to proceed more quickly.
>
> . . . .
>
> [A]lthough a smooth, largely self-regulating discovery process should be the court's goal . . . the document-by-document approach guarantees extensive involvement by the court in the discovery process, deterring the parties from themselves conducting discovery to a significant extent.

*Cipollone,* 785 F.2d at 1122 n.18 (*citing Manual for Complex Litigation Second* § 21.431 (1985)).

An approach similar to ArmorWorks' proposal was adopted by this Court in *Standard Space Platforms Corp. v. United States*, 35 Fed.Cl. 505 (1996). The Court entered a protective

[4] To the extent that the status of a particular document turns on questions of fact, the parties may need to conduct limited deposition and written discovery, and the Court likely would need to hear fact witness testimony. The Government proposes that the parties hold a meeting in order to permit experts to offer their opinion as to what information is proprietary. It is unlikely that such a meeting would greatly streamline resolution of the issues. Although technical opinions may be relevant for a few issues, the primary issues would be either questions of law (*e.g.* definition of a trade secret; contract interpretation) or issues of fact of which an expert would have no personal knowledge (*e.g.* dealings between the parties; efforts to protect trade secrets).

order requiring plaintiff to conduct an initial review of the responsive documents and to identify those in which it was interested before defendant was required to determine and assert whether any confidential or proprietary information contained therein should be protected. The Court opined that "such an 'initial review' procedure would likely save time, effort, and expense, thereby furthering the 'just, speedy, and inexpensive determination' of this matter RCFC 1(a)(2)." *Id.* at 508.

For the same reasons, the most efficient and economical approach in this case – by far -- is the use of an umbrella protective order, with document-by-document review being reserved for situations where AOA or the Government identifies a particular document(s) that it needs to use as an exhibit, *and* redaction is not feasible, *and* the parties cannot reach an agreement with ArmorWorks regarding the handling of the information in question.

## III. CONCLUSION

In sum, ArmorWorks submits that the Court should continue the umbrella protective order approach it implemented with the Temporary Protective Order already in place. This approach expedites discovery, minimizes the involvement of ArmorWorks and the Court in the discovery process, and will result in binding adjudications regarding the proprietary nature of ArmorWorks' documents only in those few instances (if any) where such an adjudication is necessary.

Dated: August 11, 2006

Respectfully submitted,

HOLLAND & KNIGHT LLP

s/Steven D. Gordon

Steven D. Gordon
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955-3000 – phone
(202) 955-5564 – fax

*Counsel for Intervenor ArmorWorks, LLC*

Of Counsel

David J. Craig
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955-3000 – phone
(202) 955-5564 – fax

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing Response to Defendant's Memorandum to be served this 11th day of August 2006 electronically on:

Leslie Cayer Ohta, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, D.C. 20530

Cynthia Malyszek, Esq.
Malyszek & Malyszek
10100 Santa Monica Blvd., Suite 800
Los Angeles, CA. 90067

s/Steven D. Gordon
Steven D. Gordon

# 3923457_v3