# In the United States Court of Federal Claims

No. 04-1731 C

(Filed: October 17, 2006)

| | | |
|---|---|---|
| **ARMOUR OF AMERICA,** Plaintiff, v. **THE UNITED STATES,** Defendant, and **ARMORWORKS, LLC** Intervenor. | * | Proprietary information; trade secret; umbrella or blanket protective order; issue preclusion |

*Cynthia Malyszek*, of Malyszek & Malyszek, Los Angeles, CA, for Plaintiff.

*Leslie Cayer Ohta*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for Defendant, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, and *Bryant G. Snee*, Assistant Director; of counsel *Bridget Jarvis*, Naval Air Systems Command.

*Steven D. Gordon*, of Holland & Knight LLP, Washington, DC, for Intervenor, with whom was *David J. Craig*, Holland & Knight LLP, Washington, DC, of counsel.

---

## OPINION and ORDER

---

**DAMICH**, Chief Judge.

In this contract case between Armour of America ("AOA") and the government, ArmorWorks intervened to protect its proprietary information and the Court issued a Temporary

Protective Order pursuant to Rule 26(c) of the Rules of the U.S. Court of Federal Claims ("RCFC").[1] Now the Court must decide whether to allow the Temporary Protective Order to remain in place through pretrial discovery in order to protect the information designated as proprietary by Intervenor ArmorWorks or whether to engage in an item-by-item determination of which documents are proprietary and deserve protection. Under the circumstances, the Court finds that it is appropriate to keep the Temporary Protective Order in place until AOA and the government determine which documents are relevant for trial. At that time, the Court will make an independent evaluation of each document required for trial as to whether it should be labeled as proprietary and prevented from disclosure to the public.

## I. Background

On June 10, 2004, the United States and AOA entered into a contract to design, manufacture and test a Light Weight Armour Replacement System ("LWARS") for the U.S. Marine Corps' CH-46E tandem rotor helicopter. Compl. ¶ 4, 11, 42. Two months later, the government terminated for default. Compl. ¶ 57. The government subsequently reprocured the contract with ArmorWorks.

On January 24, 2006, ArmorWorks filed a Motion to Intervene pursuant to RCFC 24(a), seeking to intervene in this action as a matter of right in order to protect against harm caused by the release of proprietary information of ArmorWorks during the course of pretrial discovery. Shortly before filing the motion, ArmorWorks had received notification from government's counsel that documents marked as ArmorWorks's proprietary information had been inadvertently released to AOA's counsel during the autumn of 2005. Mot. to Intervene 1. The government did not oppose the motion, but AOA did oppose it. The Court granted ArmorWorks's motion on March 17, 2006, allowing ArmorWorks to intervene for the limited purpose of protecting its proprietary information.

The Court held a status conference on April 13, 2006, to discuss the most suitable means for protecting ArmorWorks's proprietary information. On the same day, the Court issued an order requiring government's counsel to hand over to ArmorWorks's counsel the discovery documents that had been inadvertently released to AOA's counsel. The order further required ArmorWorks's counsel to review the documents and indicate those portions containing proprietary information.[2] At a status conference held on May 16, 2006, government's counsel

---

[1] RCFC 26(c) largely tracks Rule 26(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. Proc."), and interpretation of Fed. R. Civ. Proc. 26(c) informs the Court's analysis. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended June 20, 2006) (stating that "interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.")

[2] ArmorWorks's counsel identified approximately 1400 pages that it considered to contain proprietary information.

indicated that she disagreed with some of the redactions proposed by ArmorWorks's counsel because she disputed that the indicated material was in fact proprietary. Government's counsel asked the Court to review each of the documents to determine whether they should properly be labeled proprietary.

On May 17, 2006, the Court ordered supplemental briefing on the following issues:

1. Whether issuance of a protective order constitutes a determination that the protected information is proprietary for purposes other than the instant litigation;

2. What criteria govern the Court's determination whether information is proprietary or not; and

3. What procedures the Court should adopt to determine which of Intervenor's proposed redactions are proprietary and which are not, giving due weight to considerations of economy and efficiency on behalf of the Court and the parties.

Thereafter, a Temporary Protective Order was issued by the Court to protect ArmorWorks's proprietary information until the Court could resolve this dispute. The Protective Order specifically states that "protection of information pursuant to this protective order does not mean that the Court deems the material to be proprietary for purposes other than this protective order."

## II. Analysis

### A. Protective Order

ArmorWorks, as Intervenor, contends that because it plays only a tangential role in this litigation between Plaintiff and Defendant, and because the likelihood that many of the documents will be relevant and used at trial is low, the Court should defer determination as to whether the documents are proprietary until later in the proceeding. According to Intervenor, the umbrella protective order should remain in place, and, if at any point during discovery the redactions prove infeasible, first the parties, and then the Court, can attempt to resolve the problem. Defendant, in contrast, contends that determinations regarding the proprietary nature of each of the documents should be made now. According to Defendant, the parties should meet with designated experts, who can offer their opinion whether information is proprietary or not. Only if the parties are not able to agree as to which information is proprietary will the Court need to resolve the dispute. If the Court deems any information to be proprietary, Defendant avers that the Court should next consider whether Intervenor has waived its right to protection from disclosure by not labeling the information as proprietary.

Federal courts have widely utilized umbrella or blanket protective orders, particularly in complex cases or cases involving large-scale discovery, upon a threshold showing of good cause by the party seeking protection. *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1307 (11th Cir. 2001); *Pearson v. Miller*, 211 F.3d 57, 73 (3d Cir. 2000); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 n.17 (3d Cir. 1994); *Howes v. Ashland Oil, Inc.*, No. 87-5939, 1991 WL 73251, at *3 (6th Cir. May 6, 1991); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122-23 (3d Cir. 1986). When a court issues an umbrella protective order, the court is not rendering a decision that any particular document is in fact proprietary, in which case the decision could have a preclusive effect on future litigation.[3] Instead, such protective orders serve as an efficiency measure. "When the volume of potentially protected materials is large, an umbrella order will expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication." Manual for Complex Litigation § 11.432, at 64 (4th ed. 2004); *see also Rice v. United States*, 39 Fed. Cl. 747, 750 (1997); *Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505, 508 (1996). Such an order is designed to facilitate the exchange of information during pretrial discovery and limit judicial review only to those materials that are relevant to the disputed legal issues. *In re Alexander Grant & Co. Litig.*, 820 F.2d at 356. Pretrial discovery is not a public component of a civil trial. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). Therefore, court-imposed limitations on disclosure of information prior to trial implicate the First Amendment rights of those denied access far less than if otherwise imposed, and entry of a protective order limited to pretrial discovery does not offend the First Amendment.[4] *Id.* at 34, 37. Under the circumstances, the Court finds that the parties can effectively conduct pre-trial discovery under the terms of the umbrella protective order. Such an approach is particularly appropriate, here, where the action is between Plaintiff and Defendant, and Intervenor has no primary interest in the lawsuit. Furthermore, Intervenor is a direct competitor with Plaintiff. Blanket protective orders are frequently utilized by courts in cases involving direct competitors, allowing competitors to designate confidential commercial information as protected. *See*, *e.g.*, *Bayer AG & Miles, Inc. v. Barr Labs, Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995). Giving due weight to considerations of economy and efficiency on behalf of the Court and the parties, the

---

[3] Although during oral argument Defendant largely justified the need for immediate review by the Court of Intervenor's designation of proprietary information under the protective order based on the potential preclusive effect on other litigation, Defendant concedes in its brief that the mere issuance of a protective order does not constitute a determination that protected information is proprietary for the purposes of other litigation.

[4] Defendant argued vociferously during oral argument that the Court should render determinations regarding proprietary information now in order to protect the public interest. Given the absence of arguments in Defendant's brief regarding the importance of the public interest during pretrial discovery, Defendant tacitly agrees that First Amendment rights are implicated far less during pretrial discovery.

Court concludes that leaving the Temporary Protective Order in place at the present time is appropriate.

Ultimately, it will be incumbent upon Plaintiff to show the relevance of any document it seeks from Defendant in proving its case. "Where a party seeking a protective order has shown that the information sought is confidential and that its disclosure might be harmful, the burden shifts to the party seeking discovery to establish that disclosure of trade secrets and confidential information is relevant and necessary to its case." *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987); *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1025 (Fed. Cir. 1986). Where appropriate, a decision as to whether full disclosure to the public is warranted may be postponed until trial. *E. I. Du Pont de Nemours Powder Co. v. Masland*, 244 U.S. 100, 103 (1917); *Consol. Box Co. v. United States*, 1973 WL 157850, at *6 (Ct. Cl. Dec. 14, 1973); *Lever Bros. Co. v. Proctor & Gamble Mfg. Co.*, 38 F. Supp. 680, 683-84 (D. Md. 1941). The Court therefore deems it to be a prudent use of judicial resources to defer determination of the proprietary nature of any of the documents sought to be protected by Intervenor under the protective order until Defendant or Plaintiff is in a position to justify the relevance of the documents to trial of the issues.[5]

The Court's decision to keep the Temporary Protective Order in place does not preclude a later determination that information is or is not proprietary either in the instant litigation or in any other litigation. Because Intervenor ultimately bears the burden of proving that any documents sought to be protected from public disclosure are in fact proprietary, Intervenor's counsel shall not be careless in its assignment of the proprietary label. "Although the judge, in the interest of reducing the time and expense of the discovery process, should be somewhat tolerant of [the practice of designating any possibly sensitive documents as confidential], counsel should not mark documents as protected under the order without a good-faith belief that they are entitled to protection. . . . The designation of a document as confidential should be viewed as equivalent to a motion for protective order and subject to the sanctions of Federal Rule of Civil Procedure 37(a)(4), as provided by Rule 26(c)." Manual for Complex Litigation § 11.432, at 64 n.134 (4th ed. 2004). If the Court finds that Intervenor's counsel failed to make a good faith effort at labeling proprietary only those documents that warrant protection from disclosure, the Court will take appropriate action including ordering sanctions.

**B. Determination that Information is Proprietary**

In contrast to the issuance of a protective order, a determination by the Court that information is proprietary could have a preclusive effect. The binding effect of a proprietary determination by the Court is governed by the doctrine of issue preclusion. Intervenor cites *Franklin Savings Corp. v. United States*, 56 Fed. Cl. 720, 736 (2003), *aff'd*, 97 Fed. Appx. 331 (Fed. Cir. 2004), for the four-part test applied by the Federal Circuit in determining whether issue preclusion applies: "(1) the issues are identical to those in the prior proceeding, (2) the issues

[5] At that time, the Court can also take up the issue of waiver.

were actually litigated, (3) the determination of the issues was necessary to the resulting judgment, and (4) the party defending against preclusion had a full and fair opportunity to litigate the issues." Pursuant to the doctrine, Intervenor avers that if the Court adjudicates and renders a final decision finding that any given document is or is not proprietary, that final decision could have a preclusive effect on subsequent litigation in this or another court. Intervenor quotes *Dana III v. E.S. Originals, Inc.,* 342 F.3d 1320, 1323 (Fed. Cir. 2003), as stating that "[t]he test for finality is whether the prior decision was 'adequately deliberated and firm' or 'avowedly tentative,' and whether the parties were fully heard in the prior proceeding." Based on that definition, Intervenor concludes that any determination that information is proprietary by the Court would be a final determination having a preclusive effect. Further, Intervenor contends that any determination by the Court that information is not proprietary would be final in practice, and likewise have a preclusive effect, as soon as the information is released to the public.

Notably, Intervenor fails to analyze the third factor of the test set forth by the Federal Circuit, namely whether determination of the issue was necessary to the resulting judgment. It does not appear to the Court that a determination regarding whether or not certain discovery information is or is not proprietary would in any way be necessary to the judgment in the instant litigation, which is a contract dispute between Plaintiff and Defendant. The requirement that the issue be necessary to the judgment is interpreted narrowly. Restatement (Second) of Judgments § 27 cmt. h (1982); *see also In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326-27 (4th Cir. 2004) (finding that "supportive of" is too broad a standard). Moreover, when a party is attempting to invoke issue preclusion offensively, courts have broad discretion not to apply the doctrine, especially if there is the possibility of unfairness. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979). The Court, therefore, finds no basis for concluding that a determination by this Court that any information is proprietary will necessarily have a preclusive binding effect in a subsequent proceeding.

Defendant requests that if the Court does render a determination that certain information is proprietary, then the Court should stipulate that such a determination only binds the parties for the purpose of this litigation and not for future litigation. Defendant cites no authority to support its contention that the Court may in fact prevent any determination with respect to proprietary information from having a preclusive effect on future litigation. For the reasons discussed above, however, the Court finds no reason to make any determinations regarding the proprietary nature of the discovery documents at this time. Therefore, the Court finds the doctrine of issue preclusion to be of no consequence to current discovery proceedings.

Upon the showing of relevance of a document for trial, the Court will then need to determine whether the document contains proprietary information so as to justify withholding the document from the public at trial. At that time, the Court will be much more sensitive to the interest in having an open and public trial. The parties disagree about what information constitutes proprietary information that may be protected from disclosure by the Court. RCFC 26(c) provides that, for good cause shown, the Court may enter an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." In particular, an order

may stipulate "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." RCFC 26(c)(7). Defendant contends that the term "proprietary information" is interpreted in the Federal Acquisition Regulations, 48 C.F.R. § 252.227-7013, at 448 (2005), to mean "technical data that describe the steps, sequences, and conditions of manufacturing, processing or assembly used by the manufacturer to produce an item or component or to perform a process." Defendant further asserts that the term "trade secret" has been defined for the purpose of Exemption 4 of the Freedom of Information Act ("FOIA") to mean "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1288 (D.C. Cir. 1983).

Intervenor agrees that the Freedom of Information Act is an appropriate starting point for determining whether Intervenor's information should be protected from disclosure; however, quoting directly from the FOIA, Intervenor maintains that Exemption 4 provides that agencies are exempt from disclosing "trade secrets and *commercial or financial information* obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4) (2000) (emphasis added). Therefore, Intervenor contends that Defendant's definition of proprietary information is unduly limiting because more than just trade secrets are protected from disclosure by an agency; commercial and financial information that is privileged or confidential is also protected.[6] Moreover, Intervenor cites state law and the Restatement (Third) of Unfair Competition to argue that Defendant also improperly limits the term "trade secret" to productive processes.[7] To properly assess what information is entitled to protection under RCFC 26(c), according to Intervenor, the court should look not only to whether the information is confidential or privileged, but also to the circumstances under which the information was provided to Defendant, the solicitation and contract provisions between the parties, communications between the parties, and prior dealings between the parties.

The Court agrees that Defendant's definition of what constitutes information qualifying for protection under RCFC 26(c) is too narrow. Prior to 1970, Rule 30(b) provided that "secret processes, developments, or research need not be disclosed" during discovery. 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2043, at 554 (2d ed. 1994). This was broadened with the 1970 amendments such that Rule 26(c) allows a court to order that "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." *Id*. Moreover, Rule 26(c) gives the court broad discretion to issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." RCFC

---

[6] Intervenor further asserts that certain FAR provisions prohibit the disclosure of proposal and source selection information under the Trade Secrets Act or the FOIA.

[7] In doing so, Intervenor correctly notes that federal courts apply state trade secret law. *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1116 (Fed. Cir. 1996).

26(c); Fed. R. Civ. P. 26(c); *see Seattle Times*, 467 U.S. at 36 ("Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."); *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002) ("Although courts may be more likely to grant protective orders for the information listed in Rule 26(c)(7), courts have consistently granted protective orders that prevent disclosure of many types of information . . . ."). Accordingly, the Court will need to consider more than just secret formulas and processes to be information warranting protection from disclosure if and when the Court makes determinations regarding whether information is proprietary.

## III. Conclusion

The Court ORDERS that the Temporary Protective Order remain in place. At such time as Plaintiff or Defendant is able to justify the relevance of a particular document for trial or the need to disclose a particular document to someone not provided for under the terms of the Protective Order, and such document is labeled as proprietary by Intervenor, Plaintiff or Defendant may file an appropriate motion asking the Court to consider whether protection of the document from disclosure is warranted.

s/ Edward J. Damich
Edward J. Damich
Chief Judge