provide their proposed attachment method. Based upon the lack of information in their proposal, Armour of America did not satisfactorily demonstrate they would meet the accessibility requirement during the qualification tests. Risk is increased.

- **Dimensionally Meet Existing Drawings:** Per their proposal, Armour of America states they will ensure their LWARS will meet dimensional requirements by using production tooling, molds, and templates. Armour of America will use the GFI drawings for the mounting hole locations and armor dimensions, as well as survey aircraft to determine variance in actual dimensions of fleet aircraft. The TET believes the surveys require measurements with armor installed and removed on a number of aircraft. This is estimated by PMA-226 APMSE to take approximately 3 hours per aircraft by fleet maintenance personnel to remove and reinstall the armor and will require approximately 10 aircraft for a statistically relevant sample. This additional aircraft measurement will potentially add 3-4 weeks to the NRE portion of the program. This equates to approximately 40 man-hours of FST support to facilitate data collection and interpretation and operational aircraft down time, which can be minimized by selecting fleet aircraft that are in a non-flyable status. Armour of America satisfactorily demonstrated their LWARS will meet the existing GFI armor drawing dimensions based on the information required.

- **Require No Additional Maintenance after Installation:** Armour of America, per their proposal, anticipates no scheduled maintenance other than visual inspection, cleaning and paint touch-up as required, which is the same as the current CH-46E aircraft armor. However, the TET believes composite armor will require special care and handling that the fleet currently does not consider nor perform with the current metallic armor during removal, reinstallation, and storage. Also, composite material usually must undergo some form of NDI inspection after some interval, which will have to be addressed in their maintenance plan, to ensure the structural soundness of the material. Armour of America offers a maintenance package to inspect the LWARS armor every 5 years in order to address inspection. The TET anticipates an additional cost for the maintenance package that is not included in the proposal. Reparability is not discussed in Armour of America's proposal.

**Fit Evaluation Summary:**

Armor of America's fit plan, based on their proposal, is lacking key information that increases their risk. Although the state in their proposal their LWARS will make accessibility easier, they do not provide sufficient justification to validate this statement. Additionally, AOA states in their proposal they require aircraft mounting bracket and armor mounting hole measurements be taken during the NRE. This will have the tendency to increase cost and schedule for the program to some extent based on the support that will be required by the government engineers, approximately 40 man-hours, and fleet maintenance support, approximately 3 man-hours per aircraft, and will require approximately 3-4 weeks to accomplish approximately 10 aircraft.

Armour of America does not fully explain their attachment concept in their proposal, but it does use existing hole locations. It is unclear, based on the proposal, whether the attachment concept will accommodate aircraft variation. Armour of America states in their proposal no additional maintenance is required after installation for their proposed LWARS. They also

offer a maintenance package to inspect armor on a 5-year basis, but do not mention if this will be a requirement in their maintenance plan or it is merely an option they will provide at additional fleet cost. AOA's approach for meeting the fit requirements of the LWARS solicitation may cause some disruption in schedule and/or degradation of performance. These findings led the TET to rate the sub-factor as **Satisfactory** with a **Low** risk based on ? This write-up is pretty negative. What about it is satisfactory?

**Technical Capabilities:**

- **Capability to Transition from Prototype to Production:** Armour of America states in their proposal they have experience on other armor programs as an asset in transitioning from prototype to production. They state in their proposal their program management skills, supplier teaming, manpower, scheduling ability, quality assurance and experience as helpful factors in successfully transitioning. Armour of America states in their proposal their teaming arrangement with their suppliers eliminates long lead items and they can ramp-up their skilled workforce in 2 weeks. However, they do not provide a schedule or state the need for design-review meetings. The TET believes AOA has the ability to transition from prototype to production, however there is some risk since supporting documentation from their other programs where they successfully went from prototype to production was not provided in their proposal, but merely stated.

- **Manufacturing Process, Facilities, Resources, and Parts Supply:** In their proposal, Armour of America describes their manufacturing process as: cutting the Kevlar/Spectra backing and ceramic tiles; combining the Kevlar/Spectra, tiles and resin in a mold; applying pressure to cure the panel; painting. AOA states in their proposal they use oversight of all their ongoing programs through a functional matrix vice a program manager to adjust schedule and manpower to support required production and delivery schedules. The TET believes this management method increases AOA's risk for producing LWARS on cost and schedule. They state in their proposal they have ballistic test capability at an in-house test range. According to their proposal, Armour of America has established material supply arrangements with all their suppliers (to include Spectra, Kevlar and the ceramics). However, based on their supply methods stated in their proposal, there is some risk to AOA producing LWARS on schedule: they state they do not order supplies until needed on the manufacturing floor (just in time supply); they only list one supplier for each of their key LWARS materials in their proposal; they state they adjust required supplies on a yearly basis if required. Based on the content of their proposal, Armour of America satisfactorily demonstrated their manufacturing process, resources, and parts supply are capable of producing LWARS, but risk is increased.

- **Recognition of Technical Risk Areas:** Although they did not include a Technical Risk Section in their proposal, Armour of America in their proposal has identified several areas of potential risk to include: rigidity of armor panel, environmental testing gaps/shortfalls, and LWARS dimensional accuracy. They did not however recognize in their proposal the technical risk in meeting the LWARS ballistic requirements (they do not currently meet the requirements based on the test data they submitted in their proposal). Based on the content of their proposal, the TET believes they have marginally identified all potential risks and have marginally developed mitigation plans for their identified risk areas.

- **Development of Mitigation Plans:** Armour of America, per their proposal, will use Kevlar in the armor panel construction to add rigidity; will environmentally test to fill any gaps in previously conducted environmental testing; will use drill jigs to ensure manufacturing accuracy of panel holes and will survey several aircraft to compare to GFI drawings. A plan was not submitted in their proposal to mitigate the unidentified risk behind meeting the ballistic requirements. Based on the content of their proposal, the TET believes Armour of America marginally demonstrated their ability to develop mitigation plans for potential LWARS program risks.

- **Quality Assurance Considerations:** Armour of America states in their proposal they are ISO 9001 certified; their manufacturing process (e.g. drilling) has tight tolerance controls; and they warranty their armor for ballistic impact properties. Quality control during or at the end of the manufacturing process to ensure a quality armor panel is not discussed in the AOA proposal. Armour of America does offer an x-ray process as part of the maintenance package to inspect armor panels for cracks, voids and physical defects. It is not stated in their proposal if this x-ray process is at additional cost to the government or not. Per the content of their proposal, Armour of America marginally demonstrated their ability to employ QA considerations.

- **Corrective Action Processes:** In their proposal, Armour of America omits corrective action processes. Armour of America's proposal is unsatisfactory regarding corrective action processes.

- **Supplier Quality Assurance:** In their proposal, Armour of America omits supplier quality assurance. Armour of America's proposal is unsatisfactory regarding supplier quality assurance.

- **Configuration Management:** In their proposal, Armour of America omits configuration management. Armour of America's proposal is unsatisfactory regarding configuration management.

- **Use of GFE/GFI:** In addition to the GFE/GFI provided for the RFP, Armour of America states in their proposal they need to survey aircraft to determine variance in actual dimensions of fleet aircraft, which the TET believes requires measurements with armor installed and removed on a number of aircraft. This is estimated by PMA-226 APMSE to take approximately 3 hours per aircraft by fleet maintenance personnel to remove and reinstall the armor and will require approximately 10 aircraft for a statistically relevant sample. This additional aircraft measurement will potentially add 3-4 weeks to the NRE portion of the program. This equates to approximately 40 man-hours of FST support to facilitate data collection and interpretation and operational aircraft down time, which can be minimized by selecting fleet aircraft that are in a non-flyable status. Additionally, AOA stated in their proposal they require a set of current aircraft armor be sent to them during the initial stages of the program. This should have minimal impact on the fleet, but will require approximately 40 FST man hours to verify what differences exist, if any, between the aircraft armor and the existing drawings to ensure the government is aware of any issues with the armor prior to issuing it to AOA. Armour of America, per their

proposal, will utilize the provided MIL-STD-810 as a guide for environmental testing, and will utilize all the drawings of the current armor. They do not state utilization of MIL-STD-662 for guidance or any other industry-accepted practice on ballistic testing. ~~Armour of America satisfactorily demonstrated their intent and ability to utilize the GFE/GFI.~~ This is not what is being evaluated.

•

**Technical Capability Evaluation Summary:**

Armour of America has demonstrated they have satisfactory production facilities, resources and supply plan to facilitate a successful LWARS program. Armour of America has marginally demonstrated they have the capabilities to transition from prototype to production, assure quality and identify/mitigate risks in order to facilitate a successful LWARS program. Armour of America has unsatisfactorily demonstrated they have the proper configuration management, supplier quality assurance and corrective actions processes. AOA's approach for meeting the technical capability requirements of the LWARS solicitation may cause some disruption in schedule and/or degradation of performance. These findings led the TET to rate the sub-factor as **Marginal** with a **Medium** risk.

**Overall Technical Summary:**

Armour of America's technical proposal was considered by the TET to have some areas lacking detail, which increases their risk, but contained enough detail to conduct a complete evaluation. Their weight reduction approach in their proposal exceeds the RFP weight reduction requirement with medium risk. It is important to note that their approach unsatisfactorily meets the ballistic requirement with a high risk. AOA states in their proposal they will conduct environmental compatibility testing to meet the RFP requirements that are not covered by the testing AOA had previously conducted through an independent laboratory. AOA states in their proposal they require aircraft mounting bracket and armor mounting hole measurements be taken during the NRE. This will have the tendency to increase cost and schedule for their LWARS program. Additionally, AOA states in their proposal no additional maintenance is required after installation for their proposed LWARS, but require taking measurements of fleet aircraft to account for mounting bracket/hole variations. Armour of America has demonstrated they have satisfactory production facilities and resources to facilitate a successful LWARS program but did satisfactorily demonstrate that they have the proper configuration management, supplier quality assurance and corrective actions processes. . The TET assigned **Armour of America** an overall Technical Rating of **Highly Satisfactory** with **Medium** Risk.

Strengths: Are these really strengths? With the exception of the first bullet, they don't seem to exceed the minimum requirements of the RFP and are often unsubstantiated.

- AOA proposed LWARS' 42% aerial density reduction exceeds RFP requirement by 7%.
- AOA state in their proposal their armor has been previously supplied to five rotory wing manufacturers.
- AOA states in their proposal their proposed LWARS has successfully passed multi-hit testing and demonstrated a capability of stopping 3 shots inside a 3-inch diameter circle although the threat was undefined.
- AOA provides test report, with limited data, where a reputable independent third party had conducted some environmental testing IAW MIL-STD-810. Is this a strength when

write-up above states "this testing does not completely meet the RFP SOW environmental compatibility requirements. "

- AOA states they will use production tooling, molds, and templates to ensure their LWARS will meet the existing drawings dimensionally. Is this really a strength when "The TET believes the surveys require measurements with armor installed and removed on a number of aircraft. This is estimated by PMA-226 APMSE to take approximately 3 hours per aircraft by fleet maintenance personnel to remove and reinstall the armor and will require approximately 10 aircraft for a statistically relevant sample. This additional aircraft measurement will potentially add 3-4 weeks to the NRE portion of the program. "
- AOA states in their proposal their manufacturing processes have tight controls.
- AOA states in their proposal they have previous experience in armor production.
- AOA states in their proposal they can quickly ramp-up workforce and raw materials.

Weaknesses:

- Armor layer details (e.g. thickness, density) are not provided in the AOA proposal.
- Other aircraft that AOA produced armor is installed on are not cited in their proposal.
- AOA does not state intent to conduct qualification weight test in their proposal
- AOA states the material proposed for their LWARS has undergone multi-hit testing but they failed to identify the threat utilized in this previous testing.
- Previous vibration testing AOA stated in their proposal that was conducted on material that their proposed LWARS will be based on was conducted at a different frequency from that required in the RFP
- ~~Acceleration testing is TBD and no claim is made on whether armor can meet RFP requirements~~ Listed as a defieiciency.
- AOA did not state in their proposal if environmental testing will be conducted in-house or outsourced.
- AOA's method for mounting/attaching the armor to the aircraft is not sufficiently detailed
- AOA states in their proposal they will match drill their LWARS fastener holes to ensure aircraft fit, which makes their LWARS tied to a specific aircraft and limits fleet flexibility.
- AOA did not discuss in their proposal the method they will use to mount their LWARS to the aircraft.
- As stated in their proposal, the AOA maintenance plan is unclear – what needs to be done between the 5 year inspections
- Reparability of their LWARS is not stated in their proposal.
- AOA does not provide in their proposal a prototype to production schedule.
- It is unclear in their proposal whether x-ray inspection process will also be used during production process
- MIL-STD-662 or other industry –accepted practice not addressed in ~~cited as being used for guidance~~ in their proposal.

Deficiencies:

- Armour of America does not state in their proposal that their LWARS will be capable of meeting RFP ballistics requirement
- AOA fails to mention in their proposal their qualification plan for determining constant velocity, point of impact angle, and their LWARS ballistic limit.

- AOA did not provide details on their plan to test their proposed LWARS to the multi-hit RFP requirement.
- AOA did not provide in their proposal an overall environmental compatibility testing plan, which should provide their plan for meeting the vibration, temperature, acceleration, fluid resistance, humidity, and salt spray/fog requirements of the RFP SOW.
- AOA states in their proposal their acceleration testing is TBD and did not provide data, analysis, or an estimate of whether their proposed LWARS material will meet the acceleration requirement of the RFP SOW.
- AOA did not provide information in their proposal on configuration management, supplier QA, or a corrective action process as stated in the RFP.

Discrepancies/Omissions:

- Using 11 psf as areal density of CH-46 armor (RFP states 10.44 psf)
- AOA's aerial density reduction for their proposed LWARS as stated in their proposal on page 1 (61%) and page 2 (62%) differ.
- Ballistics section missing from AOA's technical proposal on copies 2-7.
- As stated in their proposal, there is a discrepancy for the previously conducted multi-hit testing on their material that will be used for their LWARS: AOA states their material will meet a requirement of 3 rounds in a 3 inch diameter circle and 3 rounds in a 2 inch diameter circle.

**AOA**

| Sub-Factor | Original Rating | New Rating | Comments |
|---|---|---|---|
| Weight Red | O/M | O/M | |
| Ballistics | U/H | **S/H** | Provided testing procedures |
| Environmental | S/M | S/M | |
| Fit | S/L | **HS/L** | Attachment option allows for variation |
| Technical | M/M | **S/M** | Provided Corrective Actions, Supplier QA, and Configuration Management Sections |

**Armor Works**

| Sub-Factor | Original Rating | New Rating | Comments |
|---|---|---|---|
| Weight Red | O/L | O/L | |
| Ballistics | O/L | O/L | |
| Environmental | S/L | S/L | |
| Fit | S/L | S/L | |
| Technical | S/M | S/M | |

**Hardcore**

| Sub-Factor | Original Rating | New Rating | Comments |
|---|---|---|---|
| Weight Red | S/M | **S/L** | Includes Armor weight testing |
| Ballistics | M/M | **S/M** | Provided Multi-hit capability |
| Environmental | S/L | S/L | |
| Fit | U/H | **S/H** | Attachment option allows for variation, same accessibility, Did not provide maintenance info |
| Technical | U/M | **M/H** | Provided Configuration Management, QA and Risk Sections; Did not provide Corrective Actions, Supplier QA Sections |

**M-Cubed**

| Sub-Factor | Original Rating | New Rating | Comments |
|---|---|---|---|
| Weight Red | HS/M | HS/M | |
| Ballistics | S/M | S/M | |
| Environmental | S/M | S/M | |
| Fit | U/H | **S/L** | Attachment option allows for variation, same accessibility, same maintenance, will dimensionally meet drawings |
| Technical | M/H | **S/M** | Provided Risk & Supplier QA Sections; Provided additional Info on Corrective Actions and Configuration Management |

**Neptune**

| Sub-Factor | Original Rating | New Rating | Comments |
|---|---|---|---|
| Weight Red | O/H | **O/M** | Provided supporting armor weight data |
| Ballistics | S/M | S/M | |
| Environmental | S/M | S/M | |
| Fit | S/L | S/L | |
| Technical | S/M | S/M | |

NAV09013

Armor of Arm

- How can 1 person give A its weight Rating?

- Exp designing armor to meet RQmnt - but RFP rqmnt is understanding test RQmnts.

- if their data shows results for different threats - doesn't that infer that they know how do conduct the tests - they just need to Δ the threat?

- Is info inadequate - but also it demonstrate an ability to conduct the tests?

- Address multi hit capability - do you evaluate it on all offerors?

- No supporting documentation - what doc was provided for other offerors - such as Armorworks?

Armor of America

- rounds Gov't Lbs/sq ft inappropriate (full.)
  although wt of current sys is current at Y97
- Environmental tests already done
- 20 yrs exp., lots of military exp.
- production molds
- a/c survey. / drawings
- offers maint package - Rtn to AOA @ 4 yr intervals
  w/ 60 month warranty exten-
- Indep lab testing.
- 16 k sq ft Facility + Small Ballistic range.
- ISO 9001 Certified

— No Discussion of risk areas / risk mitigation, schedule, corrective action plan
use of GFOLS, CM

Armor of America

| LWARS | Section M | | Section L | Section C |
| --- | --- | --- | --- | --- |
| A. Weight | 35% reduction in arial density HS, O, O =? | O M | Material description, choice of material type, wt savings | 35% reduction |
| | I-HS - how can it be different? it all revolves using same criteria | | No discussion of choice of matl | No sppt of arial density reduction |
| | KSP 60 | | No discussion of how they will verify weight reduct | No test plan |
| | | | No examples of other programs just stmt of being supplied | |
| B. Ballistics | Clear understanding of test rqmnts<br>Understanding of determination of constant velocity<br>Understanding of determination of point of impact ad obliquity<br>Understanding of calulation of a ballistic limit | U M | Describe qualification test procedures | V50 of 2900 ft .30 caliber APM20 @ 30degerre angle<br>Multiple ballistic impact wi/6" area<br>Accepts finish rqmnts |
| | Does not appear to address a test program at all | | not demonstrated they have experience designing armor to meet specific threats | different threats + velocities |
| C. Environmental | Understanding of environmental compatibility testing<br>Vibration, temperature, fluid retention, humidity, salt spray | | Describe test procedures | Normal vibration, acceleration, environmental, fuels, oils, spray, humidity, temperature |
| | has passed some vibe testing<br>will test IAW/810 - but not now<br>has successfully passed most of the environ tests but no detail provided | | test results not submitted for most of them | Despite shortfalls, adequate understanding of test rqmnts. |
| D. Fit | Mate wo/modification to airframe<br>Same or better accessibility<br>Dimensionally meet exsiting drawings<br>Not require additional maintenance | | Ability to meet Fit rqmnts | Mate wo/modification, fit check with drawings<br>fit check by govt<br>Approach that accomodates variations in airframes desirable |
| | drill holes<br>No discussion of how they will address variation. | | survey a/c,<br>use drawings<br>visual insp, cleaning, touch up paint<br>offers mount pads at 5 yr intervals | - need a set of current armor |
| E. Technical Capability | Prototype to production<br>Facilities, resources, parts supply<br>Technical risk areas, mitigation plans<br>QA, corrective action processes<br>Supplier QA, configuration mgmt<br>Use of GFE/GFI | | Demonstrate ability to transistion | |

000182

NAV14172

- Ballistics test RQmnt
- Testing done to different RQmnts
- lots left out of tech capability
- Fit – NO attachment method described
  – Can it deal w/ variations
- Maintenance – Not adequately addressed
- A/C Surveys; armor provided in [illegible]

FOR OFFICIAL USE ONLY

From: Janice E. Woehrer (AIR-2.4.3.3), SSEB Chairperson
To: Carol Tisone (AIR-2.4.3), SSA

Subj: **SSEB MINUTES AND FINAL RECOMMENDATION FOR CONTRACT AWARD OF A LIGHTWEIGHT ARMOR REPLACEMENT SYSTEM (LWARS) – RFP# N00019-04-R-0073**

Ref: (a) LWARS SSEB Minutes & Recommendation dated 29 March 2004
(b) SSA Approval Memo dated 29 March 2004
(c) SSA Memo to Eliminate a Proposal from the Competitive Range dated 13 April 2004

Encl: (1) Technical Evaluation Team (TET) Final Reports
(2) Price Evaluation Team (PET) Final Reports

1. **Background**: The Source Selection Evaluation Board (SSEB) was convened on 26 March 2004 to review and consider the results of the Technical, Past Performance, and Price Teams' evaluation of the nine (9) proposals received in response to Solicitation N00019-04-R-0073 for a Light Weight Armor Replacement System (LWARS) for the CH-46E helicopter. As a result, the voting members of the SSEB determined that award could not be made to any offeror based upon the initial proposals received. They further determined that a competitive range would be established for the purpose of holding discussions and requesting final revised proposals. The offerors included in the competitive range were ArmorWorks, Tempe, AZ; Armour of America, Beverly Hills, CA; Hardcore Composites, New Castle, DE; M-Cubed Technologies (two (2) different proposals), Newark, DE; and Neptune Precision Components, Jacksonville, FL. The remaining three offerors, Mide' Technolgy Corporation, Medford, MA; Protective Materials Company, Miami Lakes, FL; and Vertical Horizons One, Inc., Newark, OH were excluded and were no longer considered to be within the competitive range for award. References (a) and (b) document s the SSEB's recommendations and the SSA's subsequent approval.

On 1 April 2004, discussion questions were sent to the offerors in the competitive range. At the time and date specified for closing, only five responses were received. M-Cubed Technologies provided a response for only one of their proposals, Reaction Bonded Boron Carbide (RBBC). They did not provide a response for their Reaction Bonded Silicon Carbide (RBSC) proposal. This proposal was therefore eliminated from further consideration as documented in Reference (c). Following review and evaluation of the offerors' revised proposals, discussions were concluded and a letter was sent to each of the five offerors requesting final revised proposals on 30 April 2004. The SSEB reconvened on 21 May 2004 to review and consider the additional information received during discussions and receipt of final revised proposals. As a result of these deliberations, the SSEB unanimously agreed to recommend that award be made to Armour of America, Beverly Hills, CA. The circumstances and rationale that led to the SSEB's recommendation are set forth below. The details specific to each offeror are set forth Enclosures (1) and (2).

2. **Evaluation Criteria**: As stated in previous documentation, the solicitation specified three evaluation factors: Technical, Past Performance, and Price. The Technical, Past Performance and Price factors are of equal importance. When combined, the Technical and Past Performance

factors are significantly more important than Price. The technical evaluation subfactors were: Weight Reduction, Ballistics, Environmental Compatibility, Fit and Technical Capabilities. Weight Reduction is more important than the combined importance of Ballistics, Environmental Compatibility, Fit and Technical Capabilities, which are of equal importance.

3. <u>SSEB Membership & Protocol</u>: Ms. Woehrer, SSEB Chairperson and PCO for the LWARS procurement, began the meeting by ensuring that all attendees had signed a non-disclosure statement. Ms. Woehrer noted that once the SSEB was concluded, no discussion of information in reference to this solicitation/proposal evaluation should take place in accordance with FAR 3.104. She further stated that all of the documents related to this procurement are considered Source Selection Sensitive and should be handled accordingly. Finally, all inquiries should be forwarded to the PCI for disposition. Those in attendance at Patuxent River were:

Ms. Carol Tisone, AIR 2.4.3, SSA
Ms. Janice E. Woehrer, AIR 2.4.3.3 (PCO), SSEB Chairperson & Voting Member
Mr. Anthony Condurso, AIR 11.1, Office of Counsel, Advisor
Ms. Angela Hall, AIR 11.1, Office of Counsel, Intern
Mr. John Gallagher, AIR 4.1, TET Member
Ms. Julie Matheny, AIR 2.4.3.3.2, PET Chairperson
Ms. Melanie Bateman, AIR 2.4.3.3.4, SSEB Recorder

Those in attendance via VTC in Cherry Point, NC were:

LtCol Mitchell Bauman, PMA-226, Voting Member
Mr. John Taylor, H-46 FST.0/AIR-4.1.1, Voting Member
Mr. Jon Winchester, PMA 226, PET Member
LtCol Jon MacCartney, TET Chairperson
Ms. Trish Butler, PMA-226/AIR-1.1.4.1, PPET Chairperson
Mr. Daryl Bugbee, AIR 4.3, TET Member

4. <u>Technical Evaluation:</u> The TET Chairperson provided an overview of the rating and risk factors used by the TET to evaluate each offeror and explained the process used to evaluate the discussion responses as detailed in the Source Selection Plan. A summary of the TET's final ratings/risk factors and supporting rationale is set forth below in alphabetical order. Further detail related to the evaluation of each offeror is set forth in Enclosure (1).

| Offeror | Technical Rating | Proposal Risk |
|---|---|---|
| Armor Works | Outstanding | Low |
| Armour of America | Highly Satisfactory | Medium |
| Hardcore Composites | Satisfactory | Medium |
| M-Cubed Technologies (RBBC) | Highly Satisfactory | Medium |
| Neptune Precision Components | Satisfactory | Medium |

Prior to commencing the TET's brief, Ms. Woehrer noted that one of the RFP requirements is that the LWARS must be maintenance-free and that all composite materials seem to require some type of maintenance based upon the TET reports. Since all of the offerors have proposed a composite material for their LWARS, Ms. Woehrer questioned whether the Statement of Work

(SOW) would need to be modified in order to accommodate maintenance requirements for the armor. LtCol MacCartney stated that some type of maintenance would be needed for each type of composite material proposed by the offerors and that the SOW should be modified to reflect such changes. LtCol MacCartney further stated that, in order to be fair, this was addressed as a weakness for each offeror's proposal.

Armor Works: The TET rated Armor Works' initial technical proposal to be **Outstanding** overall with a **Low** proposal risk. The TET noted a few minor proposal discrepancies, which were satisfactorily addressed during discussions. As a result, the TET made no changes to their original technical proposal rating and proposal risk assessments. Armor Works proposed an aerial density reduction of 40%, which exceeds the 35% aerial density reduction requirement established in the RFP, with low risk. The TET found Armor Works' approach to be complete, thorough and well organized. Mr. Taylor questioned whether the type of composite used to create this armor was paintable because the CH-46 has changed colors throughout its many years. LtCol MacCartney stated that a pigment change to Armor Works' proposed material is possible.

**Armour of America (AOA):** The TET rated AOA's initial technical proposal to be **Highly Satisfactory** overall with a **Medium** proposal risk. The TET noted some weaknesses and deficiencies in their proposal, which were, for the most part, satisfactorily addressed during discussions. LtCol MacCartney also stated that several weaknesses continue to exist but that the TET believes that AOA can meet the Government's requirement through increased Government oversight. As a result, the TET made no changes to their original technical proposal rating or proposal risk assessments. AOA's proposed LWARS will result in an aerial density reduction of 41%, which greatly exceeds the 35% aerial density reduction requirement specified in the RFP.

Hardcore Composites: The TET rated Hardcore Composites' initial technical proposal to be **Satisfactory** overall with **Low** proposal risk. Hardcore Composites proposed an aerial density reduction of 35%, which is the minimum requirement specified in the RFP.The TET noted numerous significant weaknesses and deficiencies in their proposal, which were not all satisfactorily addressed during discussions. Based upon the continued existence of weaknesses in some areas, particularly in the Fit and Technical Capabilities portions of their proposal, the TET adjusted their proposal risk rating from Low to **Medium** risk. However, the SSEB noted that these continued weaknesses were not due to a poor approach but were rather the result of a lack of information and were not significant. Therefore, the SSEB determined the final proposal rating and risk to be **Satisfactory** overall with **Low** proposal risk.

**M-Cubed Technologies (Reaction Bonded Boron Carbide – RBBC):** The TET rated M-Cubed's initial technical proposal to be **Satisfactory** overall with **Medium** proposal risk. M-Cubed proposed an aerial density reduction of 38%, which exceeds the 35% aerial density reduction specified in the RFP. M-Cubed's RBBC initial proposal contained numerous weaknesses and several deficiencies which were, for the most part, satisfactorily addressed as a result of discussions. LtCol MacCartney stated that several weaknesses continue to exist, but that the TET believes that M-Cubed can meet the Government's requirement. For this reason, the TET adjusted the Technical Proposal rating from Satisfactory to **Highly Satisfactory** but also noted that the assigned risk rating did not change based upon additional questions that resulted from discussions but that this risk could be managed through increased Government oversight.

FOR OFFICIAL USE ONLY

The SSEB discussed these findings and considered the weaknesses to be more significant than the TET and therefore adjusted the rating to from a Highly Satisfactory to a **Highly Satisfactory** – (minus)overall but did not change the Medium proposal risk assessment.

**Neptune Precision Components:** The TET rated Neptune's initial technical proposal to be **Satisfactory** overall with **Medium** proposal risk. Neptune's initial proposal contained numerous weaknesses and several deficiencies, which were not satisfactorily addressed as a result of discussions. Neptune proposed a range of percentages for the various pieces of armor with the greatest of these resulting in a 43% aerial density reduction. However, the TET noted that Neptune's calculation of the overall weight reduction depends upon the final design chosen by Neptune, as their proposal appeared to include four (4) different types of thickness. In addition, Neptune's proposal continued to lack a schedule that will meet the Government's requirement as specified in the RFP. As a result, the TET made no changes to their original technical proposal rating or proposal risk assessments. The SSEB discussed these findings and determined that the number of weaknesses and deficiencies, especially with regard to the weight reduction uncertainties and the schedule, warranted a lower overall rating. Accordingly they reduced the rating from Satisfactory to **Marginal** but did not change the **Medium** proposal risk assessment.

5. **Past Performance Evaluation**: There were no Past Performance issues identified as a result of the initial evaluations. Therefore, the Past Performance risk assessments continued to be as follows:

| Offeror | Past Performance Risk |
|---|---|
| ArmorWorks | Low |
| Armour of America | Low |
| Hardcore Composites | Low |
| M-Cubed Technologies | Low |
| Neptune Precision Components | Low |

6. **Price Evaluation**: At the conclusion of the TET brief, Ms. Matheny explained the process for evaluating the revised price proposals based on the receipt of information received during discussions and final revised proposals. As stated previously, each offeror received a letter on 30 April 2004 requesting final revised proposals. Included in this letter was a statement to identify the approximate budget for this procurement, $5,000,000. A summary of the proposed and evaluated prices for each offeror is set forth below in alphabetical order. A written summary follows. Further detail related to the final price evaluation for each offeror is set forth in Enclosure (2).

| Offeror | Evaluated Price For Qty of 147 | Proposed Price For Qty of 147 | Proposed Price For Qty of 226 |
|---|---|---|---|
| Armor Works | $6,224,797 | $6,216,193 | $9,113,827 |
| Armour of America | $4,079,860 | $4,067,434 | $6,051,384 |
| Hardcore Composites | $4,164,215 | $4,164,215 | $6,062,980 |
| M-Cubed Technologies (RBBC) | $4,771,469 | $4,771,469 | $6,922,007 |
| Neptune Precision Components | $3,533,636 | $3,533,636 | $5,000,000 |

Ms. Matheny stated that all Offerors acknowledged Amendments 0001 – 0004 and that the PET verified all calculations in the revised proposal submissions. It was also noted that each Offeror's revised proposal was evaluated for reasonableness and consistency in accordance with Section M of the solicitation.

**Armor Works:** Ms. Matheny stated that Armor Works corrected the errors from their original proposal submission based on the discussion questions dated 1 April 2004. In addition, they stated in their final revised proposal that they could provide only 115 kits for the Government's budgeted $5M Based on the 30 April 2004 letter requesting final offers, ArmorWorks reduced their final proposed price by $298,284 for a total evaluated price of $6,224,797 for a quantity of 147 kits..

**Armour of America (AOA) :** Ms. Matheny stated that Armour of America corrected the errors from their original proposal submission based on the discussion questions dated 1 April 2004. Ms. Matheny noted that AOA's final revised price for the entire NRE effort (CLINs 0001-0004) was low because they stated that, with the exception of the qualification test articles (CLIN 0002), all developmental costs associated with NRE would be borne by AOA. Based on the 30 April 2004 letter requesting final offers, AOA reduced their final proposed price by $1,653,376 for a total evaluated price of $4,079,860 for a quantity of 147 kits.

**Hardcore Composites:** Ms. Matheny stated that Hardcore Composites corrected the errors from their original proposal submission based on the discussion questions dated 1 April 2004. Ms. Matheny also noted that during the NRE phase, subcontractors would account for 25% of the total engineering effort. Based on the 30 April 2004 letter requesting final offers, Hardcore Composites reduced their final proposed price by $688,450 for a total evaluated price of $4,164,215 for a quantity of 147 kits.

**M-Cubed Technologies (RBBC):** Ms. Matheny stated that M-Cubed Technologies corrected the minor errors from their original proposal submission based on the discussion questions dated 1 April 2004. Ms. Matheny also noted that Simula, Inc., a subcontractor, will perform 47% of the work (based on labor dollars). This was an issue because this competition is a small business set-aside, which will require M-Cubed to perform at least 51% of the work. Based on the 30 April 2004 letter requesting final offers, M-Cubed Technologies reduced their final proposed price by $102,238 for a total evaluated price of $4,771,469 for a quantity of 147 kits.

**Neptune Precision Composites:** Ms. Matheny stated that Neptune corrected the minor errors from their original proposal submission based on the discussion questions dated 1 April 2004. Based on the 30 April 2004 letter requesting final offers, Neptune reduced their final proposed price by $830,773 for a total evaluated price of $3,533,636 for a quantity of 147 kits.

Mr. Condurso asked whether any of the offerors took exception to any clauses or term and conditions of the contract. Ms. Matheny stated that no exceptions were taken.

**SSEB Deliberations:** Following the presentations by the Technical and Price Evaluation Team Chairpersons, the SSEB reviewed the findings for each offeror with proper consideration given to the weight of each evaluation factor. As stated in section M of the RFP, the Technical, Past Performance and Price factors are of equal importance. When combined, the Technical and Past

Performance factors are significantly more important than Price. All of the offerors under consideration were evaluated with Low Past Performance risk. With that understood, they began their deliberations. The results of these deliberations and the SSEB's subsequent recommendation relative to each offeror's proposal are set forth below in alphabetical order. For the purposes of this source selection, proposals were not ranked.

| | Tech Rating | Proposal Risk | Past Performance Risk | Total Evaluated Price (147 Kits) |
|---|---|---|---|---|
| Armor Works | O | L | L | $ 6,224,797 |
| Armour of America | HS | M | L | $ 4,079,860 |
| Hardcore Composites | S | *L* | L | $ 4,164,215 |
| M-Cubed (RBBC) | *HS-* | M | L | $ 4,771,469 |
| Neptune Precision | *M* | M | L | $ 3,533,636 |

Note: The italicized, underlined ratings indicate adjustments made by the SSEB

**Armor Works:** The SSEB determined that award could not be made to Armor Works based on the results of the discussions and final revised proposals. Although the TET assigned an Outstanding rating and Low risk, Armor Works proposed an aerial density reduction of 40%, which is still 1% lower than the highest proposed aerial density reduction offered by Armour of America. With proper consideration given to the TET, PPET and PET findings, the SSEB determined that Armor Work's technical proposal rating of Outstanding with Low proposal risk did not warrant the price premium of $2,144,937 over Armour of America's proposed price for 147 kits.

**Armour of America:** Armour of America proposed the highest aerial density reduction at 41% combined with an assigned technical rating of Highly Satisfactory. Although Armour of America received a proposal risk rating of Medium, the TET stated that the risk could be mitigated through the Government's involvement and management of the program. Armour of America's proposed price was the lowest proposed of the four (4) Offerors who received a Satisfactory or better proposal rating. With proper consideration given to the TET, PPET and PET findings, Armour of America's proposal when applied to the RFP evaluation criteria represents the best value to the Government and should receive the award.

**Hardcore Composites:** The SSEB determined that award could not be made to Hardcore Composites based on the results of the discussions and final revised proposals. Hardcore Composites proposed a 35% aerial density reduction, which is the minimum requirement specified in the RFP, and is 6% less than the highest proposed reduction of 41% offered by Armour of America. With proper consideration given to the TET, PPET and PET findings, the SSEB determined that Hardcore's technical proposal rating of Satisfactory with Low proposal risk did not warrant the price premium of $84,355 over Armour of America's proposed price.

**M-Cubed Technologies (RBBC):** The SSEB determined that award could not be made to M-Cubed Technologies (RBBC) based on the results of the discussions and final revised proposals. M-Cubed Technologies (RBBC) proposed a 38% aerial density reduction, which

exceeded the minimum specified in the RFP, but was still 3% less than the highest proposed reduction of 41% offered by Armour of America. With proper consideration given to the TET, PPET and PET findings, the SSEB determined that M-Cubed's technical proposal rating of Highly Satisfactory – (minus) with Medium proposal risk was not the best value for the Government.

**Neptune Precision Components:** The SSEB determined that award could not be made to M-Cubed Technologies (RBBC) based on the results of the discussions and final revised proposals. Neptune proposed an aerial density reduction ranging between 38% to 58% and their proposed schedule did not meet the Government's requirements. Although Neptune offered the overall lowest price proposed, based on the Marginal technical rating and Medium proposal risk rating, the SSEB did not believe that Neptune could meet the minimum Government requirements. Therefore, with proper consideration given to all three evaluation factors, the SSEB determined that award could not be made to Neptune.

8. **Summary**: Based upon the preceding information, the SSEB unanimously recommends that award be made to Armour of America. With proper consideration given to the weight of the three evaluation factors, Technical, Past Performance and Price, Armour of America's proposal represents the best value to the Government.

Date: 5·21·04

JANICE E. WOEHRER
SSEB Chairperson

# SOURCE SELECTION AUTHORITY'S AWARD DETERMINATION FOR SOLICITATION N00019-04-R-0073

Based upon my review of the findings set forth in the attached Source Selection Evaluation Board (SSEB) minutes, I hereby accept the SSEB's recommendation and approve the award of a contract to Armour of America, Gardena, CA, for a Light Weight Armor Replacement System (LWARS) for the H-46 Helicopter.

The solicitation specified three evaluation factors: Technical, Past Performance, and Price. The Technical, Past Performance and Price factors are of equal importance. When combined, the Technical and Past Performance factors are significantly more important than Price. The technical evaluation subfactors were: Weight Reduction, Ballistics, Environmental Compatibility, Fit and Technical Capabilities. Weight Reduction is more important than the combined importance of Ballistics, Environmental Compatibility, Fit and Technical Capabilities, which are of equal importance.

Armour of America proposed the highest aerial density reduction at 41% combined with an assigned technical rating of Highly Satisfactory. Although Armour of America received a proposal risk rating of Medium, the Technical Evaluation Team stated that the risk could be mitigated through close Government's involvement and oversight of the program. In addition, Armour of America's proposed price was the lowest of the four (4) offerors who received a Satisfactory or better proposal rating. Therefore, with proper consideration given to the evaluation criteria and the evaluation teams' findings, Armour of America's proposal represents the best value to the Government and should receive the award

Carol A. Tisone 5-24-04

CAROL A. TISONE
Source Selection Authority

NAV13667

000191

Attachment (13)

**aoa**

**From:** Matheny, Julie L. CIV NAVAIR 2.4.3.3.2 [Julie.Matheny@navy.mil]
**Sent:** Tuesday, June 08, 2004 11:49 AM
**To:** Nehmens, John
**Subject:** LWARS, N00019-04-C-3147
**Importance:** High
**Sensitivity:** Confidential

Good afternoon John,

Please let me know as soon as possible if you have any questions concerning the contract I sent you to review. We hope to award the contract tomorrow if at all possible. Our standard procurement system is going to be shut down starting Thursday, 6/10, close of business, until 21 June 2004, when it will be brought back up. During that timeframe, we will not be able to execute any contractual actions.

As we discussed, the total amount of contract on the Standard Form 26 is for the current funded amount of the contract, which is the NRE portion for CLINs 0002 and 0004. Per Section F of the contract, the options for the production units will be exercised no later than 7 months after contract award. These option CLINs will be funded with FY05 funds, which have not been appropriated by Congress yet. Please let me know if you have any questions.

When you are ready to sign the contract, please complete blocks 19A, 19B and 19C of the SF26 and fax or email the signed copy back to me. I will then have Janice sign and date the contract. Once she signs, I will email or fax her signed copy with the DRAFT mark removed from the SF26. I will then need to ask you to sign once again so we have a clean signed copy with both signatures and without the DRAFT mark. Unfortunately, I need to ask you to sign twice so we can have the good clean copy of the SF26. Our standard procurement system does not remove the DRAFT notation until the contracting officer has approved, signed and released the document.

Please send me a good fax number for you and Arthur. I will add this to Section A of the contract.

*Thank you,*

*Julie Matheny*

AIR 2.4.3.3.2

Naval Air Systems Command

47123 Buse Rd, Bldg 2272, Ste 353

Patuxent River, MD 20670-1547

Phone: (301) 757-6570; DSN 757

Fax: (301) 757-9039; DSN 757

RECEIVED JUN 0 8 REC'D BY:

000192

Armour of America

June 9, 2004

Naval Air Systems Command
47123 Buse Road, Bldg 2272, Ste 353
Patuxent River, MD 20670-1547
Attn: Julie Matheny

Ms. Matheny,

Armour of America has completed a review of Contract No. N00019-04-C-3147 with the following comments:

1. **4.1 LWARS Requirements (CLIN 0001) & 4.2.1.1 Weight**

   Contract requirement is providing for a minimum 41% reduction in aeral density over the existing metallic armour system weighing 577 lbs.

   During the proposal process AoA used the 577 lbs or 10.5 lbs per square foot for the existing armour as identified in the proposal package. As there were no drawings furnished, we assume the given numbers are correct.

   Since there are tolerances on the ceramic and materials used to manufacture the armour, as well as, thickness tolerances in the final armour panel, we request that the minimum reduction of the aeral density of Armour of America's LWARS armour panel be 41% +/- 5 lbs.

   This is acceptable to the Government.

2. **6. Government Furnished Information (GFI)/Government Furnished Equipment (GFE)**

   Armour of America will require a complete set of Government owned drawings identified in contract paragraph 4.2.2 Fit. These were provided with the RFP but we will provide another copy in a separate e-mail.

   Armour of America will require one (1) shipset of the current metallic armour system on the CH-46, as per RFP. The Government would like to discuss this further at the Preliminary Design Review (PDR).

   Both the GFI and GFE requested by Armour of America may be included in Attachment 2, referenced in Paragraph 6, but we did not receive Attachment 2, List of Government Furnished Information (GFI)/Government Furnished

AoA
Armour of America

Equipment (GFE). These were provided with the RFP but we will provide another copy in a separate e-mail.

3. **F.2 Time of Delivery**

Per the cover letter attached to AoA's revised pricing volume, we offered the government advantageous pricing based on Armour of America's ability to complete the entire order and ship complete by approximately 31 October 2005.

The contract reflects the Government's acceptance of the new lower pricing, but does not reflect the revised schedule in Section F, Paragraph F.2, Pages 22 of 44. The schedule needs to be revised to our 6 May 2004 submitted schedule or note AoA schedule as accepted on this contract.

The Government would like to take advantage of this accelerated schedule and will include a statement to this effect in the contract. We can work out the monthly delivery schedule at the PDR.

4. **5252.246-9522 Design Responsibility (Dec 1998)**

Armour of America takes exception to this clause.

In paragraph 4.2.2 Fit, the requirement is that:

"the contractor will demonstrate that the LWARS qualification test articles conform to the mounting hole layout as shown on the Government owned drawings provided in paragraph 6.0"

The use of GFI and GFE furnished to AoA by the government is required to meet both the mounting interface to the aircraft and paragraph 4.2.2 requirements.

Paragraph 5252.246-9522 voids the entire concept of GFE/GFI and paragraph 4.2.2.

Removal of this clause is acceptable to the Government.

5. **52.215-21 Requirement for Cost or Pricing Data**

Armour of America takes exception to this clause because Armour of America is a small business with approximately 55 employees. We have been selling commercial off-the-shelf ballistic armour systems for over 18 years. During this time, our Grade KSP-60 has been used for all rotary wing aircraft applications protecting flight deck floors, doors and seat kits.

P.O. Box 1405, Beverly Hills, CA 90213 USA
1814 W. 135th Street, Gardena, CA 90249 USA
Tel. (310) 532-0690 Fax (310) 532-8696
www.armourofamerica.com

Armour of America

Armour kits, utilizing our Grade KSP-60, are currently included in our GSA contract schedule as well as the KSP-60 plate (NSN DELM-LL-F9-0394).

Additionally, per FAR 52.215-21 Exceptions from cost or pricing data Paragraph (a) (I) (ii) A1, since this contract was a result of an adequate price competition than an exception to this clause should be granted.

This clause does not apply to the contract award but will apply to any subsequent modifications to the contract that exceed $550,000. The clause is mandatory and must remain in the contract.

Please feel free to contact us at (310) 532-0690 or by email at aoa@mindspring.com if you have any questions on the above exceptions we have noted.

Regards,

John Nehmens

John Nehmens
General Manager

P.O. Box 1405, Beverly Hills, CA 90213 USA
1814 W. 135th Street, Gardena, CA 90249 USA
Tel. (310) 532-0690 Fax (310) 532-8696
www.armourofamerica.com

06/10/2004 THU 13:10 FAX

002/002

# AWARD/CONTRACT

1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) — RATING: DO-A1 — PAGE 1 OF PAGES 63

2. CONTRACT (Proc. Inst. Ident.) NO.: 19-04-C-3147

3. EFFECTIVE DATE: 10-June-2004

4. REQUISITION/PURCHASE REQUEST/PROJECT NO.: 0010084901

5. ISSUED BY — CODE N00019
NAVAL AIR SYSTEMS COMMAND
AIR-2.4.3.3 BLDG 2272
47123 BUSE RD
PATUXENT RIVER MD 20670-1547

6. ADMINISTERED BY (If other than Item 5) — CODE S0513A
DCMA SANTA ANA
34 CIVIC CENTER PLAZA
ROOM 813 A
SANTA ANA CA 92701

7. NAME AND ADDRESS OF CONTRACTOR (No., street, city, county, state and zip code)
ARMOUR OF AMERICA
JOHN NEHMENS
1814 WEST 135TH STREET
GARDENA CA 90249-2524

CODE 51170 — FACILITY CODE

8. DELIVERY: [ ] FOB ORIGIN [ X ] OTHER (See below)

9. DISCOUNT FOR PROMPT PAYMENT: NONE

10. SUBMIT INVOICES (4 copies unless otherwise specified) TO THE ADDRESS SHOWN IN: — ITEM: Block 12

11. SHIP TO/MARK FOR — CODE
SEE SCHEDULE

12. PAYMENT WILL BE MADE BY — CODE HQ0339
DFAS COLUMBUS CENTER
DFAS-CO/WEST ENTITLEMENT OPERATIONS
PO BOX 182381
COLUMBUS OH 43218-2381

13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:
[ ] 10 U.S.C. 2304(c)( ) [ ] 41 U.S.C. 253(c)( )

14. ACCOUNTING AND APPROPRIATION DATA
See Schedule

| 15A. ITEM NO. | 15B. SUPPLIES/ SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| | SEE SCHEDULE | | | | |

15G. TOTAL AMOUNT OF CONTRACT: $118,814.00

16. TABLE OF CONTENTS

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| X | A | SOLICITATION/ CONTRACT FORM | 2 | X | I | CONTRACT CLAUSES | 35 |
| X | B | SUPPLIES OR SERVICES AND PRICES/ COSTS | 3 | | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS | |
| X | C | DESCRIPTION/ SPECS./ WORK STATEMENT | 10 | X | J | LIST OF ATTACHMENTS | 63 |
| X | D | PACKAGING AND MARKING | 17 | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| X | E | INSPECTION AND ACCEPTANCE | 19 | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| X | F | DELIVERIES OR PERFORMANCE | 21 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | G | CONTRACT ADMINISTRATION DATA | 25 | | M | EVALUATION FACTORS FOR AWARD | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 31 | | | | |

CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE

17. [X] CONTRACTOR'S NEGOTIATED AGREEMENT Contractor is required to sign this document and return 1 copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

18. [ ] AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number N00019-04-R-0073-0004 including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

19A. NAME AND TITLE OF SIGNER (Type or print)
John Nehmens General Manager

19B. NAME OF CONTRACTOR
BY [signature] (Signature of person authorized to sign)

19C. DATE SIGNED: 10 June 04

20A. NAME AND TITLE OF CONTRACTING OFFICER
JANICE E. WOEHRER / CONTRACTING OFFICER

20B. UNITED STATES OF AMERICA
BY [signature] (Signature of Contracting Officer)

20C. DATE SIGNED: 10-Jun-2004

7540-01-152-8069
PREVIOUS EDITION UNUSABLE

26-107
GPO 1985 O - 469-794

STANDARD FORM 26 (REV. 4-85)
Prescribed by GSA
FAR (48 CFR) 53.214(a)

SECTION A Solicitation/Contract Form

CLAUSES INCORPORATED BY FULL TEXT

| | | | |
|---|---|---|---|
| **PURCHASE REQUEST NO:** | 0010084901 | | |
| **DUNS NUMBER:** | 077229144 | | |
| **ISSUED BY:** | **BLOCK 6** | **DCMA POC:** | |
| **POC:** | JULIE MATHENY<br>TEL: 301-757-6570<br>FAX: 301-757-9039<br>EMAIL: Julie.Matheny@navy.mil | EVERETT KLINE (ACO)<br>TEL: 310-900-6650<br>EMAIL: Everett.Kline@dcma.mil<br>MARY GUNN<br>TEL: 310-900-6673<br>EMAIL: Mary.Gunn@dcma.mil | |
| **TPOC:** | TRISH BUTLER<br>TEL: 252-464-9382<br>FAX: 252-464-8477/9930<br>EMAIL: Patricia.l.Butler1@navy.mil | **VENDOR'S POC:** | JOHN NEHMENS<br>TEL: 310-532-0690<br>EMAIL: aoa@mindspring.com |
| **TPOC:** | JON WINCHESTER<br>TEL: 252-464-7484<br>FAX: 252-464-8477/9930<br>EMAIL: Jon.Winchester@navy.mil | **VENDOR'S POC:** | ARTHUR G. SCHREIBER<br>TEL: 310-532-0690<br>EMAIL: aoa@mindspring.com |
| | | | |

SECTION B Supplies or Services and Prices

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001 | LWARS Non-Recurring Engineering (NRE)<br>FFP | 1.00 | Lot | $0.00 | $0.00 |
| | | | | NET AMT | $0.00 |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0002 | Qualification Test Articles<br>FFP | 2.00 | Each | $34,907.00 | $69,814.00 |
| | | | | NET AMT | $69,814.00 |
| | ACRN AA Funded Amount | | | | $69,814.00 |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0003 | Data for CLINs 0001 - 0002 | .00 | Lot | $0.00 | $0.00 NSP |
| | | | | NET AMT | |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0004 | | | Lot | $ | $ NTE |
| | Travel in Support of CLINs 0001 - 0002<br>COST | | | | |
| | | | | ESTIMATED COST | $50,000.00 |
| | ACRN AA Funded Amount | | | | $50,000.00 |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0005 | LWARS Production Kits<br>FFP - Option | .00 | | $ | $ |
| | | | | NET AMT | $ |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0005AA | Option: Group A Kits (1 - 147)<br>FFP | 147.00 | Each | $21,528.00 | $3,164,616.00 |
| | | | | NET AMT | $3,164,616.00 |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0005AB | Option: Group A Kits (148 - 226)<br>FFP | 79.00 | Each | $21,528.00 | $1,700,712.00 |

NET AMT $1,700,712.00

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0006 | LWARS Production Kits<br>FFP - Option | .00 | Each | $ | $ |

NET AMT $

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0006AA | Option: Group B Kits (1 - 147)<br>FFP | 147.00 | Each | $3,428.00 | $503,916.00 |

NET AMT $503,916.00

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0006AB | | 79.00 | Each | $3,428.00 | $270,812.00 |
| | Option: Group B Kits (148 – 226)<br>FFP | | | | |
| | | | | NET AMT | $270,812.00 |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0007 | | .00 | | $ | $ |
| | Interim Support Spares<br>FFP - Option | | | | |
| | | | | NET AMT | $ |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0007AA | | 6.00 | Each | $21,528.00 | $129,168.00 |
| | Option: Group A Kits<br>FFP | | | | |
| | | | | NET AMT | $129,168.00 |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0007AB | Option: Group B Kits<br>FFP | 6.00 | Each | $3,428.00 | $20,568.00 |
| | | | | NET AMT | $20,568.00 |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0008 | Maintenance Trainer Kits<br>FFP - Option | .00 | | $ | $ |
| | | | | NET AMT | $ |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0008AA | Option: Group A Kits<br>FFP | 2.00 | Each | $21,528.00 | $43,056.00 |
| | | | | NET AMT | $43,056.00 |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0008AB | Option: Group B Kits<br>FFP | 2.00 | Each | $3,428.00 | $6,856.00 |
| | | | | NET AMT | $6,856.00 |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0009 | Option: Field Support Services<br>T&M - (Quantity 1-160) | 160.00 | Hours | $184.00 | $29,440.00 |
| | | | | TOT ESTIMATED PRICE | $29,440.00 NTE |
| | | | | CEILING PRICE | |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0010 | Option: Travel In Support of CLIN 0009<br>COST - Option | | Lot | $ | $ NTE |
| | | | | ESTIMATED COST | $50,000.00 |

NRE CLIN 0001 is a "no-cost" line item. Armour of America (AOA) stated that all required developmental costs will be at no charge to the government.

Data CLIN 0003 is Not Separately Priced (NSP).

Travel CLINs 0004/0010 and Field Support Services CLIN 0009 are Not-To-Exceed dollar amounts. The contractor shall insert a Not-To-Exceed dollar amount of $50,000 for both CLINs 0004 and 0010.

A unit consists of a shipset and a repair kit for CLINs 0005 and 0006. AOA will deliver with each shipset, one 6" x 6" and one 8" x 8" repair panel for in field repair of ballistic kits and/or other damage to the panel to make the ballistic panel mission ready for additional missions until such time as it can be taken off the aircraft. The repair kit is included in the price for CLINs 0005 and 0006 at no additional cost to the government.