4200
Ser 2.4.3.3./04-142

including the right to assess the costs associated with the re-procurement of a Light Weight Armor Replacement System from another source. If the Government incurs re-procurement costs as a result of this termination, a demand letter will be issued to your company to cover such costs.

The Government intends to issue a contract modification to reflect a no-cost settlement. The Government shall not be liable for any costs incurred under this contract as both your proposal and the resultant contract expressly state there is no cost associated with the non-recurring engineering effort. Further, the Government will not reimburse you for any costs incurred related to the qualification test articles since no decision was made regarding the selection of material. Reference (c) applies.

Finally, you must contact Captain Paul Shirley, HMMT-164 MMCO, Camp Pendleton, at (760) 763-0973 or via e-mail at ShirleyPA@3mawcpen.usmc.mil immediately to make arrangements to return the armor panels provided to you previously as Government-furnished material (GFM). As stipulated in Reference (d), all costs associated with the return of this GFM, shall be borne by your company.

You are requested to provide written confirmation and acceptance of the terms of this letter to me no later than 30 August 2004 at the address cited on this letterhead. You may contact me at (301) 757-6551, if further information is required.

Sincerely,

JANICE E. WOEHRER
Contracting Officer
Naval Air Systems Command

Copy to:
DCMA Santa Ana
DFAS Columbus
PMA-226 Cherry Point
Capt. P. Shirley, HMMT-164
NAVAIR SADBU
Small Business Administration, Washington DC Office

N00019-04-R-0073
0002
Page 1 of 3

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| 1. CONTRACT ID CODE | PAGE OF PAGES |
|---|---|
| | 1 \| 3 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| 0002 | | | H-46 |

| 6. ISSUED BY | CODE N00019 | 7. ADMINISTERED BY (If other than item 6) | CODE |
|---|---|---|---|
| NAVAL AIR SYSTEMS COMMAND<br>AIR-2.4.3.3 BLDG 2272<br>47123 BUSE RD<br>PUTUXENT RIVER MD 20670-1547 | | See Item 6 | |

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)

| | |
|---|---|
| X | 9A. AMENDMENT OF SOLICITATION NO. N00019-04-R-0073 |
| X | 9B. DATED (SEE ITEM 11) 23-Dec-2003 |
| | 10A. MOD. OF CONTRACT/ORDER NO. |
| | 10B. DATED (SEE ITEM 13) |

CODE | FACILITY CODE

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer [ ] is extended, [ ] is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor [ ] is not, [ ] is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this amendment is to revise the date and time specified for the site visit previously scheduled for 27 January 2004; revise Section C - Descriptions and Specifications; provide clarification for Q&A #1 as set forth in Amendment 0001; and provide a response for one additional question as shown on pages 2 and 3 of this amendment.

NAV13366

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| 15B. CONTRACTOR/OFFEROR<br><br>(Signature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>BY<br>(Signature of Contracting Officer) | 16C. DATE SIGNED<br>04-Feb-2004 |

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

TION A Solicitation/Contract Form

;ED BY:
Ms. Julie Matheny
NAVAIR 2.4.3.3.2
Contract Specialist
Ph: (301) 757-6570/Fax (301) 757-9039
Email: Julie.matheny@navy.mil

1. Clarification is provided for Question & Answer #1 to Attachment 3 of Amendment 0001 as follows:

Q1): What is the minimum distance between the bullet (projectiles) impacts upon the plating armor?

A1): Minimum spacing requirements are dependent upon the type and thickness of the material used. However, the LWARS shall be able to withstand multiple ballistic impacts spaced 6 inches apart or greater. Offerors will be evaluated based on the standards contained in MIL-STD-662F, which supplies minimum spacing requirements for material type and thickness.

2. The following additional Question & Answer is provided:

Q22): There is not any detailed information or drawings for the hinges, and other anchoring brackets a shown in the drawings for the Hydraulic Flight Control Closet on page 2 of 04700 or the Engine Compartment Armor drawing on page 9 of 04700. If these are to be included in the armor assembly for quotation we would need the drawing details and specifications to appropriately bid these, or something confirming that the current components and/or assemblies will be utilized.

A22): See attached drawing and specification, which should be included with Drawing E, (91145) 70705-3 Closet Door Assy, Upper, as included in Amendment 0001. Any other requests for drawings should be identified by part number or specification no later than 30 January 2004.

3. The time and date specified for receipt of proposals is not extended as a result of this amendment.

SECTION C Descriptions and Specifications

4. SECTION C - Descriptions and Specifications – Revise paragraph 4.1 and Subparagraph 4.2.1.2 of the statement of work as follows:

4.1. LWARS Requirements (CLIN 0001). The contractor shall design a LWARS to be a fit and function lightweight replacement for the existing metallic armor system. The existing engine armor design, installation, marking/identification, and finish requirements are defined by drawing numbers listed in paragraph 4.1.1. The LWARS shall provide, at a minimum, a 35% reduction in areal density over the existing metallic armor system, and no recurring maintenance after installation. **The LWARS shall be capable of at least a V50 ballistic limit of 2900 feet per second against a .30 caliber APM2 threat at 30-degree angle of obliquity. The LWARS shall be able to withstand multiple ballistic impacts spaced 6 inches apart or greater, and shall be made of material that readily accepts the surface finish requirements of the aircraft.** The LWARS shall mate with existing airframe mounting brackets without benefit of modification and shall provide provisions for maintenance access equivalent to the existing metallic armor system. The LWARS shall be capable of withstanding the normal vibratory and acceleration loads generated by the aircraft and shall not be affected by contact with normal aircraft fuels and oils. The properties of the LWARS shall not be affected by exposure to humidity, salt spray, and normal aircraft operating temperatures. The contractor shall use commercial products, processes and practices to reduce development, production and operational support costs to maximum extent practicable.

4.2.1.2. Ballistics - The contractor prepared qualification test report shall address the V50 ballistic limit testing performed on the LWARS. Ballistic testing procedures contained in MIL-PRF-46103E, MIL-A-46099C, and MIL-STD-662F may be used as a general guide in the development of the required ballistics test plan. The contractor shall determine test plan format. The contractor as a general guide may use MIL-STD-367A for LWARS test data reporting. **The LWARS shall be capable of at least a V50 ballistic limit of 2900 feet per second against a .30 caliber APM2 threat at 30-degree angle of obliquity. The LWARS shall be able to withstand multiple ballistic impacts spaced 6 inches apart or greater.**

NAV13367

SECTION L Instructions, Conditions and Notices to Bidders

5. The static aircraft (w/armor) display for potential offerors is re-scheduled for Thursday, 29 January 2004 at

) p.m. – 3:00 p.m. EST at the following location:

Commanding Officer
Marine Medium Helicopter Squadron 266
Marine Aircraft Group (MAG), 2nd Marine Aircraft Wing (MAW)
Building AS515
Marine Corps Air Station (MCAS) New River
Jacksonville, NC 28545-1017

Attendees should plan to meet in from of BLDG AS515, located off Bancroft St. at 1:45 p.m. There will be no proposal discussions held during the visit. Any questions resulting from this event shall be submitted to Ms. Julie Matheny at Julie.matheny@navy.mil or to Ms. Janice Woehrer at Janice.woehrer@navy.mil, no later than 2 February 2004.

**Brim, Margie J.**

---

**From:** Fitzgerald, Paul M CIV NAVAIRDEPOT
**Sent:** Monday, September 13, 2004 9:33 AM
**To:** Woehrer, Janice E. USNCIV NAVAIR AIR-2.4.3.3
**Cc:** Bauman, Mitchell A LtCol PMA226; Morris, Robert L CIV NAVAIRDEPOT; Winchester, Jon S CIV NAVAIRDEPOT; Johnston, Linda L. CIV NAVAIR PMA-226; Matheny, Julie L. CIV NAVAIR 2.4.3.3.2; Plessinger, Jack W CIV NAVAIR
**Subject:** RE: AOA RESPONSE TO TERMINATION

Janice,
yes.
yes.
I talked to Matt Williams on several occasions about the boron carbide. I think the first time was during the PDR at AOA. It was also mentioned at the meeting when John Nehmans and Matt came to Pax, just before the T for D letter was sent.
PMF

-----Original Message-----
**From:** Woehrer, Janice E. USNCIV NAVAIR AIR-2.4.3.3
**Sent:** Monday, September 13, 2004 9:22
**To:** Fitzgerald, Paul M CIV NAVAIRDEPOT
**Cc:** Bauman, Mitchell A LtCol PMA226; Morris, Robert L CIV NAVAIRDEPOT; Winchester, Jon S CIV NAVAIRDEPOT; Johnston, Linda L CIV NAVAIR PMA-226; Matheny, Julie L CIV NAVAIR 2.4.3.3.2; Plessinger, Jack W CIV NAVAIR
**Subject:** RE: AOA RESPONSE TO TERMINATION

Paul,

I will fax the Exhibit A and B attachments to (252) 464-8477. Am I correct that technically AOA's material was required to have an aerial density of 6.1 psf to meet the 41% weight reduction set forth in the contract? As I understand it, the 6.79 psf represents a 35% weight reduction, right? Do you remember about when did we talk to them about the use of Boron Carbide?

***JANICE E. WOEHRER***
AIR-2.4.3.3
Naval Air Systems Command
47123 Buse Road, Bldg 2272, Unit 353
Patuxent River, MD 20670-1547
Ph: (301) 757-6551
Fax: (301) 757-6552
E-Mail: woehrerje@navy.mil

-----Original Message-----
**From:** Fitzgerald, Paul M CIV NAVAIRDEPOT
**Sent:** Monday, September 13, 2004 9:11
**To:** Woehrer, Janice E. USNCIV NAVAIR AIR-2.4.3.3
**Cc:** Bauman, Mitchell A LtCol PMA226; Morris, Robert L CIV NAVAIRDEPOT; Winchester, Jon S CIV NAVAIRDEPOT; Johnston, Linda L CIV NAVAIR PMA-226; Matheny, Julie L. CIV NAVAIR 2.4.3.3.2; Plessinger, Jack W CIV NAVAIR
**Subject:** RE: AOA RESPONSE TO TERMINATION

Janice,
To my knowledge the government never "allowed" AOA to switch armor designs. We required it. During the PDR it became abundantly clear that the KSP-60 was not adequate to meet the requirement of the contract. In fact we questioned their ballistic performance before the PDR. The government made it clear that we were not going to accept an armor that weighed more than 6.79lbs/square foot or performed below the minimum threshold for ballistics (2900 fps APM2 V50 spec at 30 degrees obliquity). AOA decided on their own to pursue silicon carbide tile design which I believe is the same tile used to build the KSP-60 (just different thickness).

We discussed the use of boron carbide (lighter weight and better ballistic protection) which was rejected by AOA based on the higher cost. If you have the attachments (Exhibit A and B) to the AOA lawyers letter I'd like to read them. I'm sure we did not enter into the decision for termination lightly. This process creates more work for everyone on the government team however I believe we did what is right for the taxpayer and for the men and women in uniform.
Thanks,
Paul

-----Original Message-----
**From:** Woehrer, Janice E. USNCIV NAVAIR AIR-2.4.3.3
**Sent:** Monday, September 13, 2004 7:34
**To:** Johnston, Linda L. CIV NAVAIR PMA-226; Winchester, Jon S CIV NAVAIRDEPOT; Fitzgerald, Paul M CIV NAVAIRDEPOT
**Cc:** Bauman, Mitchell A LtCol PMA226; Morris, Robert L CIV NAVAIRDEPOT; Woehrer, Janice E. USNCIV NAVAIR AIR-2.4.3.3; Matheny, Julie L. CIV NAVAIR 2.4.3.3.2
**Subject:** AOA RESPONSE TO TERMINATION
**Importance:** High

All,

I have received the attached letter from AOA's attorneys requesting that we rescind the termination for default. While I haven't been able to discuss this with our own attorney yet, I do not believe this will have any impact on our current course of action to select another contractor. However, I must respond back to AOA ASAP and will need some information from you. I have printed all the e-mails that I have regarding the subject but am unable to determine exacting when we allowed AOA to switch from their proposed KSP-60 material to the silicon carbide. Please advise. Also, I'm not sure that I have copies of all the weekly status update reports that were generated. If someone could send me those I would appreciate it.

Thanks!

<< File: AOA T4D Response.pdf >>

***JANICE E. WOEHRER***
AIR-2.4.3.3
Naval Air Systems Command
47123 Buse Road, Bldg 2272, Unit 353
Patuxent River, MD 20670-1547
Ph: (301) 757-6551
Fax: (301) 757-6552
E-Mail: woehrerje@navy.mil

**DEPARTMENT OF THE NAVY**
NAVAL AIR SYSTEMS COMMAND
RADM WILLIAM A. MOFFETT BUILDING
47123 BUSE ROAD, BLDG 2272, STE 353
PATUXENT RIVER MD 20670-1547

IN REPLY REFER TO

4200
Ser 2.4.3.3./04-167
17 September 2004

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Armour of America
Attn: Mr. John Nehmans/Mr. Matt Williams
1814 West 135th Street
Gardena, CA 90249-2584

Gentlemen:

This letter is forwarded in response to your request of 10 September 2004 to reconsider the termination for default of Contract N00019-04-C-3147 issued via my letter Ser 2.4.3.3/04-142 of 26 August 2004. The Government has reviewed the facts pertaining to its determination and finds that no further action is required at this time. That being said, your request contained several inaccuracies. However, prior to responding to those inaccuracies, it is of the utmost importance to emphasize the environment we find ourselves in at this time. The CH-46E helicopter is currently deployed in the war against terrorism and is transporting our Marines to some of the most dangerous places existing in the world today. As such, it is imperative that the Light Weight Armor Replacement System (LWARS) that is the subject of the above referenced contract be designed and produced immediately to reduce the weight of the CH-46E so that additional Marines and critical supplies can be delivered when and where they are needed. In other words, time is of the essence.

The following information is provided in response to the inaccuracies stated in your letter:

It is true that the solicitation afforded some limited time for design and development. However, by your letter of 6 May 2004, you offered an accelerated delivery schedule that was accepted by the Government and included in the contract. In addition, the details of your accelerated delivery schedule were included in your company's brief, which you presented to the Government at the Program Management Review (PMR) on 14 July 2004. In accordance with your briefing slides, the qualification test articles were to be delivered in September 2004. Unfortunately, it was at this same PMR that you informed the Government that you would not be able to deliver an armor kit that met the requirements set forth in your proposal, i.e. an aerial density of 6.2 pounds per square foot (psf) or a 41% weight reduction. It was your acknowledgment that you could not meet your proposal requirements coupled with your decision to switch to a material that you did not propose (or for that matter was evaluated during the source selection process) that lead the Government to determine that you were failing to make progress and that failure endangered performance of the contract (*See Federal Acquisition Regulation (FAR) Part 49.402 generally*).

Thus, taking into account the high degree of importance of this contract, the short design period, the total period of performance of the contract (approximately one year) and the fact that the contract was

4200
Ser 2.4.3.3./04-167

competitively awarded, the Government properly and reasonably executed a cure notice to your company. You received and accepted such notice with no objections and in fact, your company furnished the time line for which the Government's concerns were to be cured (It should be noted that this timeline afforded you more time than that set forth in the FAR). It is also important to note that your request uses the word "purported" in front of cure notice and termination letter. Please make no mistake, the Government's correspondence concerning these two points was definitive and your company acknowledged receipt.

With regard to the meeting on 24 August 2004, it was held in order for you to present evidence suitable to cure your failure to make progress. Such evidence was not presented nor were you, by your own admission, able to provide the Government with a level of confidence that the product you proposed would reach the Fleet by the time specified in the contract. At this meeting, you indicated that your proposed armor material would not meet the contract requirement of at least a V50 ballistic limit of 2900 feet per second against a .30 caliber APM2 threat at 30 degree angle of obliquity. Furthermore, you indicated that you intended to meet a lesser standard which was not indicated by your proposal. Even if you had intended to submit an alternate proposal, said alternate proposal would not have been accepted as delineated in Section L-2, Paragraph (A) of Solicitation N00019-04-R-0073,. You also made it clear that your product would not be able to meet the minimum ballistics requirement with an aerial density of 6.2 psf. The evidence you presented during the 24 August 2004 meeting did not cure the fact that you were failing to make progress and that failure endangered your performance under the contract and in fact, you indicated that you could not meet the contract specification requirements.

In conclusion, the Government's decision as well as the requirements set forth in the LWARS solicitation N00019-04-R-0073, remain firm. Your failure to make progress endangered your performance under the contract, which in turn endangers our ability to procure a critical product needed by the Marine Corps. The essential nature of this product is demonstrated by the fact that Congress set aside funds for this express purpose.

Please contact me at (301) 757-6551 if you wish to discuss this matter further.

Sincerely,

Janice E. Woehrer

JANICE E. WOEHRER
Contracting Officer
Naval Air Systems Command



000314

**DEPARTMENT OF THE NAVY**
NAVAL AIR SYSTEMS COMMAND
RADM WILLIAM A. MOFFETT BUILDING
47123 BUSE ROAD, BLDG 2272, STE 353
PATUXENT RIVER MD 20670-1547

IN REPLY REFER TO

4200
Ser 2.4.3.3./04-197
28 October 2004

Armour of America
Attn: Mr. Arik Arad
1814 West 135th Street
Gardena, CA 90249-2584

Ref: (a) Federal Acquisition Regulation Clause 52.249-8, Default
(b) Termination for Default, Ser 2.4.3.3/04-142 of 26 August 2004

As stipulated in References (a) and (b), the Government is entitled to recoup the costs associated with the re-procurement of a Light Weight Armor Replacement System (LWARS) for the CH-46E helicopter. This cost is $2,099,438, which includes the delta contract costs to procure 147 LWARS units plus the administrative cost to put the new contract in place. While we are certain that our decision to terminate Contract N00019-04-C-3147 for default would be sustained under any ensuing legal action, we believe that the time and dollars would be more wisely spent by reaching a settlement agreement with your company. As such, the Government would be willing to discuss the possibility of executing a bilateral modification to the aforementioned contract that would: end the contract, rescind the default termination, contain language whereby your company would release any potential claims it would have against the Government and contain your agreement to pay the Government re-procurement costs as specified above.

If this acceptable to you, please provide written confirmation and acceptance of the terms of this letter to me no later than 3 November 2004 at the address cited on this letterhead. You may contact me at (301) 757-6551, if further information is required.

Sincerely,

JANICE E. WOEHRER
Contracting Officer
Naval Air Systems Command

offerors that submitted qualified proposals under the original RFP, N00019-04-R-0073. In addition, the SSEB and SSA determined that neither Neptune Precision Composites nor Armour of America would be included in the final competitive range for the following reasons:

- Neptune Precision Composites - The SSEB met on 21 May 2004 to review and consider the additional information received during discussions and receipt of final revised proposals from the five offerors determined to be in the competitive range. The Technical Evaluation Team (TET) rated Neptune's initial proposal to be Satisfactory overall with a Medium proposal risk. The SSEB discussed the findings of the TET and determined that the number of weaknesses and deficiencies, especially with regard to the weight reduction and schedule uncertainties, warranted a lower overall rating. Accordingly, the SSEB reduced the overall rating from Satisfactory to Marginal but did not change the Medium proposal risk assessment. As a result of this evaluation and concurrence from the SSA, Neptune Precision Composites' proposal does not have a reasonable chance of receiving the award and therefore will not be included in the final competitive range.

- Armour of America – Based upon the facts presented in paragraph 3 above, AOA has provided a product that will not meet the Government's minimum requirements. Therefore, AOA's proposal is considered to be Unsatisfactory and will not be included in the final competitive range.

5. Based upon the preceding information, the competitve range is revised to include only the proposals submitted by ArmorWorks, LLC., Hardcore Composites, LLC., and M-Cubed Technologies, Inc. The Government will re-open discussions with each of these three companies, request final revised proposals and select the offeror whose proposal represents the best value to the Government in accordance with the evaluation criteria set forth in Solicitation #N00019-04-R-0073.

Recommended by:

Date:____________________

JANICE E. WOEHRER
LWARS SSEB Chairperson

Approved by:

Date:____________________

CAROL A. TISONE
LWARS SSA