IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ARMOUR OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1731C |
| v. | ) | (Judge Marian Blank Horn) |
| | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

JOINT PRELIMINARY STATUS REPORT

Pursuant to Rule 16 and Appendix A, paragraph III, 4, of the Rules of this Court ("RCFC"), and the Special Procedures as revised on August 23, 2004, the parties file the following joint preliminary status report:

(a) Jurisdictional Basis Upon Which Plaintiff Relies

Plaintiff's action arises pursuant to an express contract between Armour of America ("AOA") and the United States, through the Department of the Navy. The action is brought on an appeal from final decisions of the contracting officer that terminated AOA's contract for default, and from a deemed denial of AOA's certified claim. AOA states that this Court possesses jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491 and 41 U.S.C. § 609. Although defendant is currently not aware of any reason why this Court would not possess jurisdiction to entertain plaintiff's claims.

(b) Consolidation

The parties do not believe that this case should not be consolidated with any other case.

(c) Bifurcation

The parties are not aware of any reason why liability and damages should be tried

separately.

(d) Deferral

The parties do not believe that further proceedings in this action should be delayed pending consideration of another case by this Court.

(e) Remand/Suspension

The parties do not intend to request remand or suspension.

(f) Joinder

The parties do not believe that additional parties should be joined.

(g) Dispositive Motions

While the parties agree that it is unlikely that dispositive motions will be filed, the parties requests that on or before 30 days after the conclusion of discovery, they be allowed to file a status report regarding the appropriateness of filing dispositive motions.

(h) Relevant Issues

Plaintiff's Statement Regarding The Relevant Issues

AOA's Factual Issues

1.) Whether the Government issued defective specifications.

2.) Whether the Government accepted a non-conforming bid.

3.) Whether the Government abused its discretion and breached the contract.

4.) Whether the Government abused its discretion in not allowing the proper time provided by the contract to complete performance.

AOA's Legal Issues

1.) Whether the Government was bound to its acceptance of AOA's bid proposal upon which it awarded the contract.

2.) Whether the Government could accept AOA's bid proposal which differed from the solicitation, despite their explicit knowledge of the non-conforming proposal.

3.) Whether the Government wrongfully terminated the contract for default, after AOA agreed to perform to the Government's original (not the accepted bid proposal) contract/solicitation specifications and delivery schedule, with AOA performing to the new original contract terms.

4.) Whether the improper default termination determination should entitle AOA to damages for contract breach.

5.) Whether AOA's progress on the contract was significant and in line with the terms of the contract.

6.) Whether the Government terminated the contract for default based on an incorrect delivery date, which was 5 months prior to the actual contract delivery date.

7.) If the Government did accept a conforming bid, then there was no valid contract because then it is obvious there was no meeting of the minds on a material element of the contract, and without a valid contract, there can be no valid default.

8.) Whether AOA's performance on the contract was significant and in line with the Government's required performance and delivery schedule.

<u>Plaintiff's Statement of Facts</u>

Plaintiff's statement of facts remains the same as stated in its Amended Complaint. The following factual information is additionally supplied as counter-statements to the statements

made in the Government's Statements of Facts section in this JPSR.

The Government stated that, "The solicitation also provided that the offeror had to prepare a qualification test report that would address the V50 ballistics testing performed on the LWARS, using the ballistic testing procedures contained in MIL-PRF-46103E, MIL-A-46099C, and MIL-STD-662F as a general guide in the development of the required ballistics test plan." The plaintiff agrees that the contract was signed on 10 June 2004, and the ATP was due on 15 July 2004 and submitted 19 August, 2004.

The Government states that "the offeror was required to include in its offer all exceptions, deviations, and waivers that the offeror took to the provisions of the RFP and include a certificate by the offeror that no other exceptions, deviations, and waivers to any provision or the RFP were included elsewhere in the proposal." The plaintiff disagrees. The plaintiff states that there is no requirement to include a certificate that there are no exceptions.

The Government states that "In addition , the offeror was required to provide all information and data necessary to conduct a thorough and complete technical evaluation."
The plaintiff agrees. Plaintiff, AOA provided in the technical proposal, all information necessary to conduct a technical evaluation. The letter from the NAVAIR company, dated April 1, 2004, states, "following a thorough review and evaluation of your proposal in accordance with Section M of the Solicitation and FAR 15.306, the Government has determined your proposal to be one of those within the competitive range of award." Included in this letter are a list of technical and price questions that were needed to finalize the selection. Nowhere was AOA asked to explain their proposed ballistics.

The Government states that "The offeror's proposal had to describe the weight savings the

proposed LWARS would provide and discuss the type of material, reasons for choice of material, the strengths and weaknesses of the chosen material, and weight savings in pounds, as well as a description of the qualification test procedures by which the offeror would meet the ballistics requirement of the RFP." Plaintiff agrees and states that these were answered in the technical volume and questions asked in the April 1, 2004 NAVAIR letter.

The Government states, "Weight reduction, however, was more important than the combined importance of ballistics, environmental compatibility, fit and technical capabilities. The plaintiff agrees. This was the main factor that caused AOA to submit a quotation. As AOA's KSP-60 was significantly lighter than the armour required to stop the ballistic round called out and weight being the driving factor in the re-armour effort, AOA decided to offer the KSP-60 and see if it generated any interest.

The Government states that, "Although AOA stated its proposed material had a multi-hit capability of 3 rounds spaced equidistant in a 3 inch diameter circle, AOA did not quality this multi-hit capability with the type threat it was tested with nor did it provide a test report on previous multi-hit testing." The plaintiff disagrees. AOA's proposal clearly called out "...would stop the following rounds at the velocities shown", additionally, the KSP-60 HP White Test Report was sent to Julie Matheny and Janice Woeher on April 8, 2004 as an attachment along with a picture of the panel.

The Government states, that "Additionally, AOA did not explain how the multi-hit capability would be tested and did not demonstrate a clear understanding of the ballistic test requirements and procedures required to meet the LWARS RFP ballistics requirements. The plaintiff disagrees, it was identified in AOA's Technical Volume. AOA has been in the armour

business for over thirty two years and such a statement from NAVAIR is irresponsible.

The Government states, that "On or about April 12, 2004, AOA, in responding to NAVAIR's concerns, state that its KSP-60 material would stop the following rounds at the velocities shown.

| | | | |
|---|---|---|---|
| 7.62 x 39 | Russian/Chinese | Hardcore | @ 2400 FPS |
| 7.62 x 54R | Russian/Chinese | Hardcore | @ 2800 FPS |
| 7.62 x 51 | NATO | Ball | @ 2700 FPS |
| 5.56 x 109 | NATO | Ball | @ 3300 FPS |
| 5.56 x 885 | NATO | Hardcore | @ 3200 FPS |
| 5.56x | NATO | AP | @ 3150 FPS" |

Plaintiff states that AOA's actual response date was April 8, 2004. The HP White Test Report and a picture of the shot panel was sent to NAVAIR along with the answers to the Technical Questions.

The Government states, that "On May 21, 2004,AOA's ballistics subfactor rating was changed from "unsatisfactory" with "high Risk" to "satisfactory" with "high risk," in part because AOA while AOA state that they would meet all the ballistics requirements of the RFP, they failed to provide any analysis or test results to support their intention to meet the required .30 cal APM2 threat multi-hit capability." The plaintiff disagrees. AOA never stated once to NAVAIR that AOA would meet all of the ballistic requirements prior to the award of the contract.

The Government states that, "The evaluation team, however, believed that AOA would meet the RSP requirements based upon the information reviewed to date." The plaintiff disagrees and there is no proof of such a statement.

The Government states that, "The contract also included an accelerated schedule." The plaintiff disagrees. AOA's review of the contract anc subsequent correspondence to Julie Matheny, dated 9 June 2004, identified that the accelerated schedule was not part of the contract. Matheny's comment back was that it will be worked out during PDR. Therefore, by contract, AOA had five months to deliver the prototype kits.

The Government states that, "The Government agreed to allow AOA, as requested, to shorten the delivery time of the LWARS product from March 2006 to September/October 2005. The plaintiff disagrees. The contract does not contain an accelerated schedule. NAVAIR cannot hold to the contract terms for the specifications, despite the bid proposal that was accepted, and not hold to the delivery schedule terms in the same contact.

The Government states that, "During the PDR, AOA notified NAVAIR that it was not certain whether their KSP-60 armour material could meet the weight and ballistics requirements of the contract." The plaintiff disagrees. The ballistics became an issue but the aerial density was exactly as proposed from the KSP-60.

The Government states that, "Specifically, with regard to the ballistics, AOA stated the KSP-60 material did not meet the aerial." The plaintiff disagrees. The KSP-60 did not meet the ballistic requirement. It did meet the aerial density requirement.

The Government states that, "On July 15, 2004, AOA again expressed doubts as to whether they could meet both the weight and ballistic specifications." The plaintiff disagrees. AOA identified the fact that AOA did not have the panel designed that would meet the requirement but that AOA would proceed in the development.

The Government states that, "On July 19, 2004, AOA informed NAVAIR that testing did

not go as well as expected and that AOA was still trying to reduce the weight to an acceptable number and to provide the required ballistics protection." The plaintiff cannot find any correspondence for this day relative to the above statement.

The Government states that, "On or about July 27, 2004, AOA switched from the KSP-60 material that had been proposed to silicon carbide." The plaintiff disagrees. Records show that samples were made using SIC on 22 July 2004.

Defendant's Statement Regarding The Relevant Issues

Government's Statement of Facts

1. The CH-46E helicopter is used to transport Marines. The CH-46E is fitted with metallic armor plates to protect the engines and the flight control closet from small arms fire. The total weight of the metallic armor system is 497 pounds.

2. On December 24, 2003, a request for proposal ("RFI") was issued for a Light Weight Armor Replacement System ("LWARS") to replace the existing CH-46E metallic armor system with a lightweight substitute that will result in a 35% or more weight reduction. The solicitation contained clear specifications for both weight and ballistics requirements. Specifically, the solicitation required the offerors to design a LWARS product that would provide, in pertinent part, at least a 35% reduction in weight with a V50 ballistic limit of 2900 feet per second against a .30 caliber armor piercing missile ("APM") threat at a 30-degree angle of obliquity.

3. The offeror was required to include in its offer all exceptions, deviations, and waivers that the offeror took to the provisions of the RFP and include a certificate by the offeror that no other exceptions, deviations, and waivers to any provision or the RFP were included elsewhere in the

proposal.[1] In addition, the offeror was required to provide all information and data necessary to conduct a thorough and complete technical evaluation. The offeror's proposal had to describe the weight savings in pounds the proposed LWARS would provide and discuss the type of material, reasons for choice of material, the strengths and weaknesses of the chosen material, as well as a description of the qualification test procedures by which the offeror would meet the ballistics requirement of the RFP.

The evaluation factors were technical, past performance, and price, each being of equal importance. Combined, technical and past performance are significantly more important than price. The technical evaluation subfactors factors were: weight, ballistics, environmental compatibility, fit and technical capabilities. Weight reduction, however, was more important than the combined importance of ballistics, environmental compatibility, fit and technical capabilities.

In its February 9, 2004, proposal, AOA did not raise any deviation, waivers or exceptions to the RFP. AOA proposed an armor material that offered a weight savings of 41 percent. AOA identified the specific threats that its proposed armor could meet. AOA did not specifically state that it could meet the RFP's ballistic requirements.

During the technical evaluation of the weight subfactor, AOA received an overall technical rating of "outstanding" with "medium" risk. However, for the ballistics subfactor technical rating,

---

[1] An exception is where an offeror states it will not comply with a requirement, usually involving a contract term or condition. A deviation is where an offeror states it will not comply with a requirement but proposes an alternative to meet the intent of the requirement, usually involving a specification. Exceptions, and deviations may cause proposals to be considered unacceptable. In fact, the RFP warned offerors that taking exception to any term or condition in the RFP would make an offer unacceptable, and the offeror ineligible for award, unless the RFP expressly authorized such an exception with regard to that specific term or condition.

AOA received an overall technical rating of "unsatisfactory" with "high" risk because failed to demonstrate its ability to meet the ballistic requirements.

On April 1, 2004, NAVAIR opened discussions with AOA. On or about April 12, 2004, AOA, in responding to NAVAIR's concerns, again identified the ballistic capabilities of its proposed armor. While stating that its proposed armour would be tested to the V50 ballistics limits, AOA did not specifically state that it could meet all of the RFP's ballistic requirements.

In its May 6, 2004, final revised proposal, AOA made no changes to its technical proposal. Again, AOA did not raise any deviation, waivers or exceptions to the RFP.

On May 21, 2004, AOA's ballistics subfactor rating was changed from "unsatisfactory" with "high risk" to "satisfactory" with "high risk." The evaluation team believed that AOA could meet the RFP ballistic requirements based upon the information contained in AOA's proposal.

AOA's proposal was selected from among the nine proposals considered because it was determined to represent the best value to the Government.

On June 10, 2004, AOA was awarded the contract with a contract value of $4,067,434 for a Light Weight Armor Replacement System ("LWARS") for the CH-46E helicopter.

The LWARS contract included a five-month design, development and testing phase.

At the Program Design Review ("PDR") on July 14, 2004, AOA notified NAVAIR, for the first time, that it was not certain whether its proposed armor could meet the weight and ballistics requirements of the contract. Specifically, AOA stated the its proposed armor could not stop the APM2 round.

On July 15, 2004, AOA again expressed to NAVAIR doubts as to AOA could meet both the weight and ballistic specifications.

On July 19, 2004, AOA informed NAVAIR that testing did not go as well as expected and

that AOA was not able to meet both the weight and ballistic specifications with its proposed material.

On or about July 27, 2004, AOA decided to use a different material. Upon testing, it was determined that the new material failed to meet the minimum weight and ballistics requirements.

On July 30, 2004, the contracting officer ("CO") issued to a cure notice to AOA for failure to make progress so as to endanger performance pursuant to the default clause; AOA was given August 25, 2004, to cure its failure by demonstrating, among other things, that AOA's LWARS material met the weight and ballistic requirements of the contract.

In an August 4, 2004 letter, AOA questioned the ballistic requirement and contended that the ballistics requirement was impossible to achieve.

On August 24, 2004, AOA advised NAVAIR that AOA that was unable to meet the weight and ballistic requirements of the contract, but believed they could do so if given an indeterminate amount of time.

On August 26, 2004, the CO, after concluding that AOA was unable to meet the weight and ballistic requirements in the contract and that AOA's participation in the LWARS program was not essential to successful performance under this program, terminated the LWARS contract for default for failure to make progress which had endangered performance under the contract.

On November 5, 2004, the CO issued contract to ArmorWorks in the amount of $6,121,242 for the reprocurement of LWARS for the CH-46E helicopter.

Government's Factual Issues:

1.) Whether AOA failed to make progress in the performance of the contract.

2.) Whether AOA's proposed armor material could have met the weight and ballistics

requirements of the contract.

3.) Whether the contract specifications, alone or in combination, were impossible or commercially impracticable to achieve.

Government's Legal Issues

1.) Whether AOA was bound by the ballistic specifications in the contract that differed from the proposed ballistic specification that AOA included its proposal.

2.) Whether the ballistics specifications were defective.

3.) Whether AOA was failing to make progress so as to endanger performance under the contract.

4.) If in default, whether AOA can prove by the preponderance of the evidence that its default should be excused.

5.) In the event that the termination for default is not sustained, whether AOA is entitled to recover money damages.

6.) Whether the Government can prove by the preponderance of the evidence that it is entitled to recover its re-procurement costs.

(i) Advisability of ADR

The parties are not currently in a position to pursue fruitful settlement discussions. The parties do not believe that ADR is appropriate at this time. The parties will, however, continue to consider the possibility of settlement, and the use of mediation or ADR, throughout the proceedings.

(j) Joint Proposed Schedule

i. Exchange of documents: Not applicable. All documents in the possession of

the parties have been exchanged.

ii. Completion of fact witness discovery by September 30, 2007.

iii. Designation of expert witnesses by July 1, 2005: Not applicable. The parties have already designated their experts. Exchange of expert witness reports within 45 days of fact witness discovery being completed.

iv. Completion of expert witness discovery by November 15, 2007.

v. The presumptive discovery limits shall apply in this case.

vi. The physical examination of the subject materials is not believed to be necessary in this case.

vii. The parties are available for a status conference with the Court on the following dates, following the close of discovery:

a. November 19, 2007

b. November 20, 2007

c. November 21, 2007

viii. The earliest date by which this case could reasonably be expected to be ready for trial is February 2008.

ix. The parties suggest the following three alternate dates and times for a preliminary status conference, at least seven days, but not more than twenty-one days after filing the JPSR:

a. February13, 2007 at 2:00 p.m. EST

b. February14, 2007 at 2:00 p.m. EST

c. February 15, 2007 at 2:00 p.m. EST

(k). Joint Representation Concerning Early Meeting of Counsel.

Counsel represent that they have held an early meeting of counsel, conducted telephonically, on January , 2007.

(l). Estimated Litigation Costs

Plaintiff's estimate of the litigation costs:

1.) Through the end of discovery: $200,000

2.) By the end of trial: $285,000

3.) Through appeal, if any: $300,000

Defendant's estimate of the litigation costs:

1.) Through the end of discovery: $100,000

2.) By the end of trial: $150,000

3.) Through appeal, if any: $155,000

(m) Trial

If this case does not settle, the parties will proceed to trial that is expected to last from five to eight days. The parties agree that an expedited trial pursuant to paragraph 6(b) of Appendix G is not warranted.

(n) Electronic Filing

The parties are not aware of any special issues regarding electronic case management needs.

(o) Additional Information

Plaintiff requests that the trial be held in Los Angeles, California; defendant request that the trial be held in Washington, D.C. The parties are unaware of any other matters which should be brought to the Court's attention at this time.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/ Cynthia Malyszek
CYNTHIA MALYSZEK, ESQ.
Malyszek & Malyszek
10100 Santa Monica Blvd.
Los Angeles, CA 90067
310-772-2266

Attorney for Plaintiff

Dated: February 2, 2007

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Attorneys for Defendant

Dated: February 2, 2007