IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ARMOUR OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1731C |
| v. | ) | (Judge Marian Blank Horn) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

AMENDED JOINT STIPULATION OF FACTS WITH CITATIONS

The Request For Proposals (RFP)

1. The CH-46E helicopter is used to transport Marines. The CH-46E is fitted with metallic armor plates to protect the engines and the hydraulic flight control closet from small arms fire. Joint Exhibit (JE) 7, at 0440.

2. On December 23, 2003, the Navy issued a request for proposal (RFP) for a Light Weight Armor Replacement System (LWARS) to replace the existing CH-46E metallic armor system with a lightweight substitute. JE 7, at 0440. The RFP was issued as a small-business set aside. JE 6; 47, at 0798.

3. The RFP contained specifications regarding weight and ballistics requirements. JE 7 at 0440 and 0442.

4. The RFP required that the contract awardee both design and fabricate a LWARS product that would provide at least a 35 percent reduction in weight compared to the metallic armor, and that would be capable of withstanding a threat with a V50 ballistic limit of 2900 feet per second against a .30 caliber armor piercing missile (APM) at a 30-degree angle of obliquity. JE 7 at 0440 and 0442.

5. Offerors were required to include in its offer all exceptions, deviations, and waivers that the offeror took to the provisions of the RFP, and include a certificate by the offeror that no other exceptions, deviations, and waivers to any provision or the RFP were included elsewhere in the proposal. JE 7 at 0507; 0508; 0511.

6. An exception is where an offeror states it will not comply with a requirement,

usually involving a contract term or condition. JE 7 at 0508. A deviation is where an offeror states it will not comply with a requirement, but proposes an alternative to meet the intent of the requirement. JE 7 at 0508.

7. The RFP warned offerors that taking exception to any term or condition of the RFP would make an offer unacceptable and the offeror ineligible for award, unless the RFP expressly authorized such an exception with regard to that specific term or condition. JE 7 at 0508 and 0511.

8. Offerors were required to describe the weight savings the proposed LWARS would provide, to discuss the type of material, reasons for choice of material, the strengths and weaknesses of the chosen material, and to describe the qualification test procedures by which the offeror would demonstrate that it could meet the ballistic requirements of the RFP. JE 7 at 0508.

9. The evaluation factors were technical, past performance, and price, with each being of equal importance. Combined, technical and past performance were significantly more important than price. The technical evaluation subfactors factors were: weight, ballistics, environmental compatibility, fit, and technical capabilities. JE 7 at 0516 and 0517.

10. Weight reduction was more important than the combined importance of ballistics, environmental compatibility, fit and technical capabilities. JE 7 at 0517

AOA's Proposal

11. On April 12, 2004, AOA submitted its final proposal in response to the RFP. JE 25, 26, 27, 28, 29, and 30.

12. AOA identified its own KSP-60 armor to meet the requirement. JE 26 at 0622.

13. A copy of the KSP-60 Test Report was included in the proposal.

14. In its April 12, 2004 proposal, AOA did not raise any deviation, waivers, or exceptions to the RFP. JE 25, 26, 27, 28, 29, and 30.

15. AOA proposed an armor material that offered a weight savings of 43 percent. JE 26 at 0622. See also JE35 at 0706 (weight saving of 42 per cent) and JE 47 at 0774 (weight

saving 41 percent plus/minus five pounds)..

16. AOA identified the specific threats that its proposed armor could meet. JE 26 at 0623and JE 27 at 0633. AOA did not specifically state that it could meet the RFP's ballistic requirements. See JE 26 and JE 27.

17. On April 1, 2004, NAVAIR opened discussions with AOA. JE 24 at 0601-0605.

18. In her April 1, 2004 letter to AOA, the contracting officer (CO) informed AOA that based upon her review and evaluation of its proposal, she had determined that AOA's proposal was within the competitive range for award. JE 24 at 0601.

19. Attached to the CO's April 1, 2004 letter was a list of 19 questions to be answered by AOA, eight of which were related to the ballistics portion of AOA's proposal. JE 24 at 0603-0604, questions 3 - 8 and 18. No questions were asked about whether the armor proposed would stop the round as required by the RFP. See JE 24.

20. AOA responded to the 19 questions on April 12, 2004 in Technical Volume IIA. JE 27 at 0633- 0639.

21. In responding to the Navy's questions and concerns, AOA again identified the ballistic capabilities of its proposed armor. JE 27 at 0633. AOA did not specifically state that it could meet all of the RFP's ballistic requirements. See JE 27.

22. By letter dated April 30, 2004, the CO informed AOA that she had reviewed AOA's answers to her questions, and that there was no need for further discussions. JE 31at 0657.

23. In the April 30, 2004 letter, the CO asked for a price reduction because the Navy's budget for the project was only $5,000,000. JE 31 at 0657.

24. By letter dated May 6, 2004, AOA lowered its offer, and informed the CO that it was making no additional changes to its proposal. JE 32 at 0658.

25. By letter dated May 6, 2004, AOA offered an accelerated delivery schedule, stating that AOA would complete and ship the entire LWARS order by October 31, 2005, or

sooner. JE 32 at 0658.

26. In its May 6, 2004 final revised proposal, AOA made no changes to its technical proposal. AOA did not raise any deviation, waivers or exceptions to the RFP. JE 32 at 0658.

The Evaluation

27. During the initial technical evaluation of the weight subfactor, AOA received an overall technical rating of "outstanding" with "medium" risk. JE 36 at 0716. For the ballistics subfactor technical rating, AOA received an overall technical rating of "unsatisfactory" with "high" risk because AOA failed to demonstrate its ability to meet the ballistic requirements. JE 36 at 0716 and 0717.

28. On May 21, 2004, AOA's ballistics subfactor rating was changed from "unsatisfactory" with "high risk" to "satisfactory" with "high risk" based upon the information contained in AOA's revised proposal submitted in response to the Navy's questions and concerns. JE 33 at 0664, and JE 37 at 0728 - 0729.

29. AOA's proposal was selected from among the nine proposals considered because it was determined to represent the best value to the Navy. JE 1-7 at 0076 and JE 1-9 at 0094.

30. AOA never explicitly stated in its proposal that it would be able to meet all of the ballistic requirements in the RFP. See JE 25, 26, 27, 28, 29, and 30.

31. On May 27, 2004, AOA received the pre-award letter required for the small business set-aside.

32. On June 8, 2004, AOA received the contract for review from the Navy. JE 45 at 0761.

33. In response to a request from the Navy for warranty information, on June 3, 2004, AOA responded with KSP-60 warranty information

The Award

34. On June 10, 2004, AOA was awarded the contract for a Light Weight Armor Replacement System for the CH-46E helicopter. JE 47 at 0765.

36. The contract had a potential contract value of $6,038,958.00. JE 47 0767 - 0773 (total amount of the CLINs). This amount included the base contract, as well as all options for the production units. CLINs 0001-0004 comprise the base contract. JE 47 at 0767 - 0768. CLIN 0001 was valued at $0; CLIN 0002 at $69,814; CLIN 0003 at $0; CLIN 0004 was a cost reimbursable line item not to exceed $50,000. JE 47 at 0767 - 0768. No options had been exercised on the contract prior to the termination. Therefore, at the time of termination, the value of the base contract was about $120,000. JE at 0767 - 0768 (total amount of those CLINs).

37. The contract weight specification read as follows: "[t]he LWARS shall provide, at a minimum, a 41% +/- 5 lbs. reduction in areal density over the existing metallic armor system, and no recurring routine maintenance after installation." JE 47 at 0774.

38. The contract ballistic specification read as follows: “[t]he LWARS shall be capable of at least a V50 ballistic limit of 2900 feet per second against a .30 caliber APM2 threat at 30-degree angle of obliquity" and the "LWARS shall be able to withstand multiple ballistic impacts of 3 equidistant hits in a 3-inch circle, which is 2.6 inches between shots, and be made of material that readily accepts the surface finish requirements of the aircraft." JE 47 at 0774.

39. The LWARS contract included a five-month design, development, and testing phase. JE 47 at 0785.

40. The contract schedule contained base contract line item numbers (CLINS) for the non-recurring engineering, for the delivery of the qualification test articles (QTA), and options for ordering the LWARS production kits. JE 47 at 0785. The following are the pertinent CLINs:

> CLIN 0001: Non Recurring Engineering (NRE): no later than five months after contract award
>
> CLIN 0002: Qualification Test Article (QTA): no later than five months after contract award

JE 47 at 0785.

41. CLIN 0001 served as a five-month design, development and testing phase during which AOA was to design, develop, and test an armor product for the CH-46E. JE 47 at 0785.

42. CLIN 0002 required that AOA also deliver no later than five months after contract award two QTAs. JE 47 at 0785.

43. Since the contract was awarded on June 10, 2004, AOA was to complete design phase and deliver the QTAs no later than November 10, 2004. JE 47 at 0765 and 0785.

44. In its May 6, 2004 letter, AOA offered an accelerated delivery schedule. JE 1-8 at 0084; JE 32 at 0658. See also JE 1-13 at 0132. Because the contract was never modified to incorporated this accelerated schedule, AOA was only requires to provide the QTAs by November 10, 2004.

<u>AOA's Performance</u>

<u>Program Management Review</u> (PMR)

45. The Program Management Review (PMR) (also referred to as PDR, Preliminary Design Review) was conducted on July 14, 2004, at AOA's facility. JE 52, 53, 1-12 1-13, and 1-14.

46. AOA, in its PMR presentation, included a chart that described KSP-60 ballistic capability. JE 1-13 at 0135

47. According to AOA, during the PMR, the Navy learned for the first time that AOA's proposed material was not capable of meeting the contract's ballistic specifications, and specifically noted that AOA's proposed material would not stop a 7.62 API M2 round. Testimony of Arthur Schreiber and John Nehmens.

48. During the PMR, AOA notified the Navy that it was not certain whether its KSP-60 armor material could meet the weight and ballistics requirements of the contract. JE 1-14 at 140; Testimony of Arthur Schreiber and John Nehmens.

49. During the PMR, AOA stated that it did contend in its proposal that KSP-60 could stop the required round. Testimony of Arthur Schreiber and John Nehmens.

50. According to AOA, during the PMR, AOA stated that it would develop a test panel using silicon carbide, rather than KSP-60, that could meet the ballistic and weight

specifications. JE 119 at 1162-1163; Testimony of Arthur Schreiber and John Nehmens.

AOA's Performance After PMR

51. AOA began manufacturing panels using silicon carbide tile, rather than KSP-60. . JE 119 at 1162-1163; Testimony of Arthur Schreiber and John Nehmens.

52. On or about July 15, 2004, AOA again expressed to the Navy its doubts as to whether AOA could meet both the weight and ballistic specifications.

53. On July 19, 2004, AOA informed the Navy that the ballistic testing of its armor did not go as well as expected, and that AOA was not able to meet both the weight and ballistic specifications. JE 55 at 0868.

54. On or about July 19, 2004, AOA decided to use silicon carbide, rather than KSP-60, for its proposed armor. JE 119 at 1163; Testimony of Arthur Schreiber and John Nehmens. Upon testing, it was determined that the silicon carbide failed to meet the minimum weight and ballistics requirements. Testimony of Arthur Schreiber and John Nehmens. On July 26, 2004, AOA advised the Navy that the silicon carbide would meet the weight specification but not the ballistic specification.

The Cure Notice

55. On July 30, 2004, CO issued a cure notice to AOA for failure to make progress so as to endanger performance pursuant to the default clause. JE 72 at 0931 - 0932.

56. AOA was given until August 25, 2004, to cure its failure by demonstrating, among other things, that AOA's material met the weight and ballistic requirements of the contract. JE 72 at 0931 -0932.

57. In an August 4, 2004 letter, AOA questioned the reasonableness of the ballistic requirement, and contended that the ballistics requirement was impossible to achieve. JE 1-18 at 0166.

The August 24, 2004 Meeting

58. On August 24, 2004, AOA met with the Navy to discuss the status of its

performance under the contract. JE 88 at 0978; JE 91 at 0984.

59. AOA provided the Navy with a copy of a H.P. White test report showing that a test panel weighing 7.5 lbs./sq. ft., rather than the required 6.78 lbs/sq. ft., stopped a V50 at 2905 ft./sec. JE 90 at 0983.

60. AOA also provided documents to the Navy showing that the required tooling was completed, and that the special fastener required to allow interchangeability of the armor between aircraft had been designed.

61. In response to a question from the Navy, AOA indicated that it would take three weeks to produce a test panel at the required weight of 6.78 lbs/sq. ft. See JE 91 at 0984. During this meeting, the Navy suggested that AOA switch to boron carbide, a better quality material, but AOA declined stating that the cost was prohibitive.

AOA's Termination For Default

62. On August 26, 2004, after concluding that AOA was unable to meet the weight and ballistic requirements in the contract, and that AOA's participation in the LWARS program was not essential to successful performance under this program, the CO terminated AOA's contract for default for failure to make progress which had endangered performance under the contract. JE 1-20 at 0173 - 0175; JE 1-21 at 0177 -0178.

63. The contract was terminated approximately 75 days after award, with 75 days left to deliver the QTAs that were due on November 10, 2004.

The Re-procurement Contract

63. Pursuant to the Federal Acquisition Regulation (FAR) 49.402-6 and 49.402-7(b), the Government exercised its authority to award to another contractor and charge the costs to AOA.

64. On November 5, 2004, the Government awarded a re-procurement contract to ArmorWorks with a value of $6,121,242. JE 122 at 1185-1309. Other than the period of performance and the price, the reprocurement contract was in all pertinent respects identical to

the contract awarded to AOA. See JE 47 and JE 122; testimony of Janice Woehrer, Col. Mitch Bauman; Jon Winchester; Paul Fitzgerald.

65. On February 25, 2005, the CO issued a final decision demanding payment of $2,053,808, the difference between the cost of the contract awarded to AOA and the cost of the ArmorWorks contract, plus $45,630 in administrative costs, for a total of $2,099,438, as compensation for costs incurred to re-procure the performance of the contract. JE 1-25 at 0189 - 0190.

66. The Government contends that due to AOA's failure to adequately perform this work, the Government incurred damages of approximately $1,500,000 for which AOA is liable.

67. AOA has not paid the re-procurement costs demanded by the CO's final decision. Testimony of Janice Woehrer

AOA's Certified Claim

68. On December 12, 2005, AOA submitted a certified claim to the contracting officer. JE 113 at 1078 - 1092.

69. In its claim, AOA alleged that the Navy breached the contract by not acting in good faith during its administration of the contract, including its decision to terminate AOA for default, and by awarding the contract to AOA knowing that AOA's proposal contained a patent ambiguity given that the ballistic capability of the material proposed by AOA did not meet the requirements of the RFP. JE 113 at 1078 - 1092.

70. AOA claimed it incurred damages in the amount of $3,029,833. JE 113 at 1094 - 1096.

71. Not having received a contracting officer's final decision within the specified time period, AOA deemed its claim denied. JE 119 at 1150.

72. On December 6, 2006, AOA filed an amended complaint. JE 119.

AOA's Amended Complaint

73. In its amended complaint, AOA alleges that the Navy breached its duty of good

faith and fair dealing when it awarded the contract to AOA, in its administration of the contract, and when it terminated AOA for default. JE 119 at 1171 - 1172..

AOA Contends That The Navy Beached Its Duty Of Good Faith In Accepting AOA's Proposal

74. According to AOA, AOA submitted a proposal in compliance with the proposal requirements because the RFP provided that weight reduction was more important than the combined importance of Ballistics, Environmental Compatibility, Fit, and Technical Capabilities which were of equal importance. JE 119 at 1154,

75. According to AOA, AOA submitted their technical proposal based upon a trade-off between ballistics and weight as stated in the RFP. JE 119 at 1154.

76. According to AOA, AOA never stated in its proposal that its proposed material, KSP-60, was in full compliance with ballistic specifications of the RFP. JE 119 at 1154.

77. According to AOA, AOA clearly stated in its proposal what ballistic requirements AOA could meet and the weight reduction that AOA was offering. JE 119 at 11154

78. According to AOA, the Navy accepted AOA's proposal based on the ballistics that were stated in the proposal. JE 119 at 1156 - 1157.

79. According to AOA, AOA in its proposal never suggested that its KSP-60 would stop the APM2 @ 2900 FPS at a 30 degree angle of obliquity. JE 119 at 1154.

80. According to AOA, AOA did not intend on bidding the specifications exactly as they appeared in the RFP, but upon differing specifications which would cost less with greater weight reduction. JE 119 at

81. AOA contends that despite the fact its proposal stated that the ballistic capability of its armor did not meet the RFP's requirements, the Navy awarded the contract to AOA. JE 119 at 1171.

82. According to AOA, the Navy had full knowledge that AOA never stated that it would meet the RFP's ballistic specifications, and AOA was under the assumption that it was building the armor to its proposal. JE 119 at 1154, 1166.

83. According to the Government, the Navy reasonably interpreted AOA's proposal as indicating that it would be able to meet all of the ballistics requirements of the RFP because it was a design / build contract that did not require that an offeror have a material already designed that could meet the weight and ballistic requirements of the RFP. Testimony of Charles Anderson, Janice Woeher, Carol Tisone, Col. Mitch Bauman, Paul Fitzgerald, Jon Winchester, and Jack Plessinger.

AOA Contends That The Navy Beached Its Duty Of Good Faith In Administering The Contract

84. According to AOA, the Navy acted unreasonably and arbitrarily in evaluating AOA's progress during its performance under the contract, and exercised its authority in an arbitrary, capricious, and unreasonable manner following the PMR. JE 119 at

85. According to the Government, the Navy acted reasonablely in insisting that AOA's armor material meet the ballistic specifications contained in the contract. Testimony of Charles Anderson, Janice Woeher, Carol Tisone, Col. Mitch Bauman, Paul Fitzgerald, Jon Winchester, and Jack Plessinger.

86. According to AOA, the Navy acted in bad faith towards AOA in awarding the reprocurement contract to ArmorWorks and modifying that contract. JE 119 at 1171.

87. According to the Government, AOA cannot use acts that occurred after AOA was terminated for default to support its contention that the Navy acted in bad faith in administering AOA's contract.

AOA Contends That The Navy Beached Its Duty Of Good Faith In Terminating The Contract

88. According to AOA, AOA at the time of termination could not have been in default under the contract because the QTAs were not due to be delivered until November 10, 2004, and that all delays in performance were due to the Navy's acts of bad faith. JE 119 at 1171 and 1172.

89. According to the Government, the Navy acted appropriately in terminating AOA's contract for default for failure to make progress so as to endanger performance under the

contract. JE 1. 72, 1-20, 1-21; Testimony of Charles Anderson, Janice Woeher, Carol Tisone, Col. Mitch Bauman, Paul Fitzgerald, Jon Winchester, and Jack Plessinger.

90. According to the Government, the entire contract effort represents a convenient and enforceable yardstick to to evaluate AOA's progress at termination; time was of the essence in this procurement and AOA had an obligation to make enough progress to insure performance was not endangered. JE 1. 72, 1-20, 1-21; Testimony of Charles Anderson, Janice Woeher, Carol Tisone, Col. Mitch Bauman, Paul Fitzgerald, Jon Winchester, and Jack Plessinger.

91. According to the Government, there was no reasonable likelihood that AOA would complete its contractual obligations within the specified contract time. JE 1-20 and 1-21. Testimony of Charles Anderson, Janice Woeher, Carol Tisone, Col. Mitch Bauman, Paul Fitzgerald, Jon Winchester, and Jack Plessinger.

Respectfully submitted,

JEFFREY R. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Deputy Director

s/ Cynthia Malyszek
CYNTHIA MALYSZEK, ESQ.
Malyszek & Malyszek
2029 Century Park East, Suite 1400
Los Angeles, CA 90067
310-772-2266

Attorneys for Plaintiff

Dated: January 11, 2007

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street NW
Washington, D.C. 20530
202-307-0252
202-307-0972 (Fax)

Attorneys for Defendant

Dated: January 11, 2007